In re Roy F. SKLARIN, a/k/a and d/b/a Sklarin Interiors, Debtor.

**DULBINA OF AMERICA, LTD., Plaintiff,**

v.

Roy F. SKLARIN, a/k/a and d/b/a Sklarin Interiors, Defendant.

Bankruptcy No. 86–01888–BKC–SMW. Adv. No. 86–0672–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Feb. 13, 1987.

Rodolfo Pittaluga, Jr., Holland & Knight, Miami, Fla., for plaintiff.

Raymond B. Ray, Fort Lauderdale, Fla., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE coming on to be heard upon an Adversary Proceeding pursuant to Part VII of the Bankruptcy Rules and 11 U.S.C. § 727, objecting to the Discharge of the Debtor, Roy F. Sklarin, d/b/a Sklarin Interiors, and the Court, having heard the testimony and examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

This Court has jurisdiction of the parties and of the subject matter of this action by virtue of 28 U.S.C. § 157 and § 1334.

Since 1975, Roy F. Sklarin has been continuously doing business under the name of Sklarin Interiors (the "Debtor").

In April of 1984, the Debtor caused Star Designs, Inc. ("SDI") to be incorporated under the laws of the state of Delaware for the purposes of purchasing, remodeling, and selling of a yacht called the "Double Z," subsequently renamed as the "10" (the "10"). On June 25, 1984, SDI purchased the "10" from the Plaintiff, Dulbina of America, Ltd. ("Dulbina"), for $775,000.00. In order to purchase the "10," SDI required financing by two parties: by First New England Financial Corporation ("FNEFC") and Dulbina which financed $550,000.00 and $380,000.00, respectively.

On June 25, 1984, SDI executed and delivered to Dulbina a promissory note in the principal amount of $380,000.00 (the "Note"). In addition, the Debtor executed and delivered to Dulbina an unconditional guaranty (the "Guaranty") whereby the Debtor irreparably and unconditionally guaranteed the full and prompt payment of the Note. To secure the payment and performance required under the Note and Guaranty, the Debtor executed and delivered to Dulbina a mortgage dated June 25, 1984 (the "Mortgage") granting to Dulbina a second mortgage on a condominium owned by the Debtor (the "Condominium"). The Note provided for the acceleration of all principal and interest due under the Note in the event that title in the "10" or in the Condominium was sold, transferred, encumbered, or liened prior to the due date of the Note; to wit, June 24, 1986.

In April of 1985, SDI sold the "10" for $930,000.00. SDI applied a portion of the $930,000.00 proceeds to pay the balance of the first mortgage on the "10," the commissions due as a result of said sale, and other costs associated with the closing. After paying the above bills, the Debtor caused SDI to be dissolved, caused Star Design & Yacht Sales, Inc. ("SDYS") to be incorporated under the laws of the state of Florida for the purposes of purchasing, remodeling, and selling yachts, and on April 26, 1985, had the balance of the proceeds from the sale of the vessel "10," approximately $323,041.68, to be transferred into the account of SDYS.

Between the time of the initial $323,041.68 deposit (April 26, 1985) and the next deposit (May 21, 1985), a small amount of money was documented as having been spent by SDYS to pay those expenses incurred by SDI in connection with the re-

modeling and sale of the "10." The majority of the balance went to the Debtor, was applied towards the purchase and remodeling of the first vessel purchased by SDYS, the "Fame," or was unallocable.

On or about April 29, 1985, SDYS made an offer to purchase the vessel "Fame" for $1,045,000.00, and at that time a deposit of $40,000.00 was given to the seller—$20,-000.00 by the Debtor and $20,000.00 by SDYS (SDYS's deposit coming from the initial April 26, 1985 deposit). In June of 1985, SDYS consummated the purchase of the vessel "Fame." FNEFC again financed a portion of the purchase price ($825,000.00), with the balance of the purchase price, approximately $160,000.00, being paid by the Debtor and his father, Herman Sklarin.

In September of 1985, SDYS purchased another vessel, the "Night Crossing," for $3,250,000.00. The "Fame" and "Night Crossing" were eventually repossessed by creditors which held validly perfected security interests against each of the vessels.

Dulbina eventually brought suit against SDI and the Debtor on the Note, Guaranty, and Mortgage, and on May 13, 1986, and May 23, 1986, two judgments in the total amount of $490,863.51 were entered in favor of Dulbina.

On June 26, 1986, the Debtor filed with the Bankruptcy Court his voluntary petition for relief under Chapter 7, his Statement of Assets and Liabilities, and his Statement of Financial Affairs. Dulbina timely filed with the Court its Complaint Objecting to the Debtor's Discharge under 11 U.S.C. § 727(a). Specifically, Dulbina objects to the Debtor's discharge on the grounds that: (i) the Debtor has failed to adequately explain the loss or deficiency of assets as required under 11 U.S.C. § 727(a)(5); (ii) the Debtor knowingly and fraudulently made false oaths in this case, as prohibited under 11 U.S.C. § 727(a)(4)(A), when (a) he certified, under penalty of perjury that his Statement of Financial Affairs was true and correct when at the time the he executed same, he well knew that said Statement omitted that

within the past six years immediately preceding the filing of the Chapter 7 petition, he had conducted business under, and had been a shareholder and officer in SDI and SDYS, and (b) he certified, under penalty of perjury, that his Statement of Assets and Liabilities was true and correct when at the time the Debtor executed same, he well knew that said Statement omitted the assets and property of his alter egos, SDI and SDYS, as property of the Debtor in the Chapter 7 proceedings; and (iii) on or within one year prior to the filing of the Chapter 7 petition, the Debtor, with the intent to hinder, delay, or defraud his creditors removed, transferred, and/or concealed cash and other property of the Debtor by transferring cash and/or property to other entities, including, but not limited to, his father, Herman Sklarin, SDYS, and SDI for no or inadequate consideration.

## A. Failure to Explain Loss of Assets

■ 11 U.S.C. § 727(a)(5) provides that a Court shall deny granting a discharge when a debtor fails to explain to the Court's satisfaction any loss or deficiency of assets to meet the debtor's liabilities. See *In re Chalik*, 748 F.2d 616 (11th Cir. 1984); *see also In re Martin*, 698 F.2d 883 (7th Cir.1983); *Baum v. Earl Millikin, Inc.*, 359 F.2d 811 (7th Cir.1966); and *McBee v. Sliman*, 512 F.2d 504 (5th Cir. 1975). Thus, the plaintiff has the burden of identifying the assets in question and showing that the debtor at one time had said assets and that said assets are now not presently available for creditors. Rule 4005, *Rules of Bankruptcy Procedure.* Upon such a showing, a plaintiff has established a prima facie case and the burden then shifts to the debtor to explain to the Court's satisfaction the loss or deficiency of such assets. *In re Frank*, 14 B.R. 166 (Bankr.S.D.Fla.1981); and *In re Chalik*, 748 F.2d 616 (11th Cir.1984); *see also,* 4 *Collier on Bankruptcy*, Paragraph 727.08 (15th Ed.). "Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." *In re Reed*, 700 F.2d 986, 993 (5th Cir.1983).

■ Based upon the testimony, this Court finds that the Debtor had inherited some property from his mother, that at one time the Debtor had said property, and that said property was not now presently available for creditors. The Debtor attempted to explain that the loss of this property was due to the fact that he had given his interest in his mother's estate to his father, Herman Sklarin. However, the Debtor was unable to corroborate said gift to his father by way of a written disclaimer of his interest in his mother's estate as required under FLA.STAT. § 732.801 or by way of his having paid a gift tax. In fact, the Debtor admitted at trial that neither he nor his father had paid a gift tax on said alleged gift. Such an uncorroborated unexplanation consisting of nothing more than generalities is insufficient, unsatisfactory, and fails to meet the standard required by law. The Court thus finds that the Debtor has failed to explain to this Court's satisfaction the loss of his interest in his mother's estate.

### B. False Oaths

11 U.S.C. § 727(a)(4)(A) provides that a Court shall deny a discharge to a debtor when the debtor knowingly and fraudulently makes a false oath in connection with the bankruptcy proceedings. In its Complaint, Dulbina alleges that the Debtor has made two false oaths in connection with the bankruptcy proceedings, and that therefore, the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(A). This Court finds that the Debtor has in fact made two false oaths in connection with the bankruptcy proceedings.

### 1. Statement of Financial Affairs

■ The first false oath made by the Debtor concerns the sworn Statement of Financial Affairs executed by the Debtor on June 25, 1986, and filed with the Bankruptcy Court on June 26, 1986. Question 1d to the Statement of Financial Affairs required the Debtor to respond to the following question:

"1d. Where else, and under what other names, have you carried on business within the six years immediately preceding the filing of the original petition herein? (Give street addresses, the names of any partners, joint adventures, or other associates, the nature of the business, and the periods for which it was carried on.)"

The Debtor's response to the above question was "None."

The Debtor testified that from the time SDI was incorporated in April of 1984 to the time it was dissolved in April of 1985, he was the sole 100% shareholder of SDI's stock and that he alone had absolute control over SDI. The Debtor further testified that ever since SDYS was incorporated in April of 1985, the Debtor had been and remains the President of, a 5% shareholder in, and in control of SDYS. Thus, the record in this case supports Dulbina's allegation that the Debtor made a false oath in connection with this case, when, under penalty of perjury, the Debtor signed the sworn Statement of Financial Affairs which omitted the material fact that within the past six years immediately preceding the filing of the Chapter 7 petition, the Debtor had conducted business under and had been a shareholder and officer in SDI and SDYS. However, for Dulbina to prevail under 11 U.S.C. § 727(a)(4)(A), it must establish that said false oath was knowingly and fraudulently made by the Debtor.

■ Although it is rarely possible to find direct evidence of intent to knowingly and fraudulently make a false oath, an inference of such an intent can be drawn from circumstances surrounding and observations of the Debtor. See *In re Hirsch*, 14 B.R. 59 (Bankr.S.D.Fla.1981). The Debtor testified that sometime in April of 1986, he first met with his attorney to discuss his filing of a petition in bankruptcy. The Debtor further testified that he alone was the one who provided his attorney with the information to complete the Chapter 7 petition, the sworn Statement of Financial Affairs, and all other sworn Statements in support of his petition; that

if he was "uncertain" as to his interpretation of any question he could call his attorney; and that he reviewed said sworn Statement of Financial Affairs before it was filed with the Bankruptcy Court. Given the Debtor's involvement in the preparation of the sworn Statement of Financial Affairs, his apparent understanding of what inquiry was being made in Question 1d of said Statement, his apparent ability to contact his attorney to answer any question he may have had, and the high level of sophistication of this Debtor, this Court can only conclude from the testimony and its observations of the Debtor that the Debtor's failure to disclose his past interest in and relationship with SDI and SDYS was not unintentional, but rather was intentional, knowing, and fraudulent on the part of the Debtor.

### 2. Statement of Assets and Liabilities

■ The second false oath made by the Debtor concerns the sworn Statement of Assets and Liabilities. This Statement required the Debtor to have accurately scheduled all of his assets and liabilities. Dulbina alleges that the Debtor made a false oath when the Debtor, under penalty of perjury, certified his sworn Statement of Assets and Liabilities to be true and correct, when he then well knew that said sworn Statement omitted to include the assets of his alter egos, SDI and SDYS.

"It is well established that property of the Debtor in the possession, custody and control of its alter ego comprises property of the estate at the commencement of the case," and that bankruptcy courts have the power to disregard separate corporate entities so as to reach the assets of its non-debtor alter ego to satisfy debts of the Debtor. *In re F & C Services, Inc.,* 44 B.R. 863, 868 (Bankr.S.D.Fla.1984); and *see also, In re Crabtree,* 39 B.R. 718, 11 BCD 1075 (Bankr.E.D.Tenn.1984) and cases cited therein. It is also a settled principle of law that

> " 'When one legal entity is but an instrumentality or alter ego of another, by which it is dominated, a court may look

beyond form to substance and may disregard the theory of distinct legal entities in determining ownership of assets in a bankruptcy proceeding.' *In re Eufaula Enterprises, Inc.* 565 F.2d 1157, 1161 (10th Cir.1977). See also *In re Continental Vending Machine,* 517 F.2d 997, 1000 (2d Cir.1975); *cert. denied,* 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (176)...."

*In re Crabtree,* 39 B.R. 718, 723 (Bankr.E.D.Tenn.1984).

In support of its contention, Dulbina argues that SDI and SDYS are the mere instrumentalities of the Debtor, and thus, that SDI and SDYS are the alter egos of the Debtor. The Debtor's testimony indicated that at all times he was an officer and shareholder in SDI and SDYS; that the Debtor had complete control over SDI and SDYS; that the Debtor, SDI, and SDYS shared the same bookkeeper, accountant, mailing address, and employees; that the Debtor had personally guaranteed the debts of SDI and SDYS; that the Debtor paid its own as well as SDYS's payroll; that the Debtor did design work for SDI and SDYS involving substantial sums of money without any contracts or agreements evidencing the duties and/or obligations of the Debtor, SDI, or SDYS; that the Debtor had complete control over the funds in the accounts of SDI and SDYS; that SDI and SDYS were "similar" corporations; that SDYS was the "continuation" of SDI; that the funds in the accounts of the Debtor, SDI, and SDYS were transferred in and out as the need arose without notes evidencing said indebtedness between these entities; and that the funds in the accounts of the Debtor would be used to pay the expenses of SDI and SDYS and vice versa.

Based on the evidence presented, this Court is convinced that SDI and SDYS are the instrumentalities of the Debtor, and thus, that said entities are the alter egos of the Debtor. Moreover, given the Debtor's high level of sophistication and the fact that the Debtor was the one individual who not only caused SDI and SDYS to be incorporated, but was the one individual who

controlled said entities and the transfers of assets to and from the Debtor, SDI, and SDYS, this Court finds that the Debtor knowingly and fraudulently made a false oath in connection with the bankruptcy proceedings when the Debtor, under penalty of perjury, certified his sworn Statement of Assets and Liabilities to be true and correct when the Debtor omitted in said Statement the assets and property of SDI and SDYS as property of the Debtor.

### C. Fraudulent Transfers On Or Within One Year Of Petition

11 U.S.C. § 727(a)(2)(A) provides that a debtor is to be denied a discharge when he, "with the intent to hinder, delay or defraud a creditor or an officer of the estate ... has transferred, removed or concealed ... property of the debtor within one year before the date of the filing of the petition...."

Dulbina alleges that the Debtor made such transfers and that therefore the Debtor should be denied a discharge under 11 U.S.C. § 727(a)(2)(A).

The testimony is most illuminating on this issue. The Debtor testified that on or within one year prior to the filing of the Chapter 7 petition, numerous transfers involving substantial sums of money (by way of checks) were made by and between the Debtor and SDYS. Thus, it is uncontroverted that substantial transfers of cash were made by the Debtor to SDYS on or within one year prior to the filing of the petition. However, for Dulbina to prevail under 11 U.S.C. § 727(a)(2)(A), it must show that said transfers of cash were made with the intent to hinder, delay, or defraud creditors or the trustee in this case.

Although the intent to hinder, delay, or defraud a creditor must be actual, it may be proven through circumstantial evidence or inferred by a court when the debtor has failed to disclose assets in his Statement of Assets and Liabilities and/or has given false answers in his Statement of Financial Affairs. *In re Cycle Accounting Services*, 43 B.R. 264 (Bankr.E.D.Tenn. 1984); *Farmers Coop. Association v. Strunk*, 671 F.2d 391 (10th Cir.1982); and

*Montgomery Ward & Co., Inc. v. Gordley*, 38 B.R. 630 (Bankr.S.D.Ohio 1984).

The Court finds that the Debtor failed to disclose assets in his Statement of Assets and Liabilities and that the Debtor has given false answers in connection with his Statement of Financial Affairs. Further, this Court finds that the legal effect of the transfers of cash from the Debtor to SDYS hindered and/or delayed the Debtor's creditors in these proceedings. The Debtor has offered no evidence to overcome the prima facie case established by Dulbina. Accordingly, this Court finds that on or within one year prior to the filing of the Chapter 7 petition, the Debtor transferred substantial sums of cash to SDYS with the intent to hinder, delay, or defraud his creditors.

In summary, each of the foregoing actions of the Debtor, in and of itself, is sufficient to warrant the denial of the Debtor's discharge. On all of the foregoing grounds, the Court finds that the discharge of the Debtor should be DENIED pursuant to 11 U.S.C. § 727.

As required, a separate Final Judgment will be entered in accordance with these Findings and Conclusions.