In re Steven B. MAGNANI, Debtor.

**FIRSTAR BANK IOWA, N.A., Plaintiff,**

v.

Steven B. MAGNANI, Defendant.

Bankruptcy No. 96–52510XS.
Adversary No. 96–5244XS.

United States Bankruptcy Court,
N.D. Iowa,
Western Division.

Aug. 12, 1997.

John R. Mugan, Sioux City, IA, for plaintiff.

Donald H. Molstad, Sioux City, IA, for defendant.

*ORDER RE: MOTION FOR PARTIAL
SUMMARY JUDGMENT*

WILLIAM L. EDMONDS, Chief Judge.

The matter before the court is the defendant's motion for partial summary judgment on claims objecting to his Chapter 7 discharge. Hearing on the motion was held April 24, 1997 in Sioux City. Donald H. Molstad appeared for debtor-defendant Steven B. Magnani. John R. Mugan appeared for plaintiff Firstar Bank Iowa, N.A.

Magnani filed a Chapter 7 petition on October 1, 1996. Prior to his filing, Magnani operated a lawn care and snow removal business called LanDesign. The business was formed as a partnership. Magnani held an 80% share of the partnership; Connie Orrell, his mother, owned the remaining 20% share. LanDesign ceased operation approximately one week before Magnani filed his Chapter 7 petition.

Bank was a secured creditor of LanDesign. The security agreement was not offered as an exhibit. Counsel for Magnani stated that LanDesign's debt to Bank was secured by its equipment and accounts receivable. Bank's counsel stated that Magnani also personally guaranteed the debt.

In its amended complaint filed March 3, 1997, Bank sought to determine that Magnani's debt to it is nondischargeable and objected to his Chapter 7 discharge. Bank alleged Magnani should be denied his discharge under § 727(a)(2) for transfers of "property of the debtor and/or LanDesign" with intent to hinder, delay or defraud a creditor. Document 10, Amended Complaint, ¶ 7. Bank claimed, under § 727(a)(3), that Magnani has not maintained the books and records necessary to ascertain his financial condition or that of LanDesign. *Id.* ¶ 8. As a claim under § 727(a)(4) for false oath, Bank alleged that Magnani failed to disclose in his statement of financial affairs payments made to insiders,

transfers of equipment, and the name of a bookkeeper. *Id.*, ¶ 9(a). Bank also claimed Magnani made a false oath by providing a false balance sheet and by promising to turn over titles to vehicles and equipment and failing to do so. *Id.*, ¶ 9(b), (c). Bank alleged, under § 727(a)(5), that Magnani has failed to explain satisfactorily decreases in the inventory and accounts receivable of LanDesign. *Id.*, ¶ 10. Lastly, Bank claimed Magnani should be denied his discharge under § 727(a)(7), for conduct in connection with another bankruptcy case. *Id.*, ¶ 11. Magnani denied all the material allegations of the complaint.

On March 28, 1997, Magnani filed a motion for summary judgment on each of Bank's claims under § 727. Documents 13, 14. Magnani contends that § 727 authorizes denial of discharge for actions in connection only with a debtor's individual property and business transactions. He argues that the majority of Bank's allegations, therefore, fail to state a claim because they relate to the financial affairs of LanDesign.

## DISCUSSION

The court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c), incorporated by Fed. R.Bankr.P. 7056.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e), incorporated by Fed. R.Bankr.P. 7056.

The court first disposes of two portions of the complaint as to which Bank essentially concedes that Magnani is entitled to summary judgment. Under § 727(a)(4), a debtor may be denied his discharge if he "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). Paragraphs 9(b) and 9(c) of Bank's complaint make a claim for false oath, but the allegations in those paragraphs do not refer to actions "in or in connection with" the bankruptcy case. Bank's counsel also concedes the statements referred to were not made under oath. In paragraph 11 of the complaint, Bank makes a claim under § 727(a)(7), which requires misconduct in connection with another bankruptcy case. Bank's counsel stated at the hearing on the motion that the claim is based on payments made to Rodney Orrell as described in paragraph 9(a)(i)(a) of the complaint. Orrell, Magnani's step-father, filed à Chapter 7 petition. The court takes judicial notice that the filing date in Orrell's case, No. 96–52646, was October 16, 1996. There is no dispute that the transfers to Orrell, in August 1996, took place before Orrell's bankruptcy filing. Bank has not alleged conduct by Magnani "in connection with another case." Partial summary adjudication will be granted on the foregoing claims under 727(a)(4) and 727(a)(7).

Magnani argues that the balance of Bank's § 727 claims are legally insufficient because the allegations relate to actions taken by LanDesign or to property owned by the partnership. By affidavit, Magnani states that equipment referred to in Bank's complaint was owned by LanDesign, Connie Orrell, or Orrell Leasing, and not by him individually. Plaintiff's Exhibit A, Affidavit, ¶¶ 4, 5, 12, 13, 14, 19, 23, 27, 28; *see also* Bank's Statement of Material Facts, Exhibits H (deposition testimony that lawn mowers were leased from Orrell Leasing), and K (deposition testimony that one-ton truck was titled to Connie Orrell). Magnani denies ever having had an individual ownership interest in the inventory or accounts receivable of LanDesign. Affidavit, ¶ 17. He states that the alleged payments to insiders were made by LanDesign. *Id.*, ¶ 26; *see also* Bank's Exhibits N–T (showing payments drawn on accounts of LanDesign or SBM Landscaping). Magnani

states that bookkeeper Donna Christophersen was employed by LanDesign and not by him individually. Affidavit, ¶ 31.

Although Bank disagrees with Magnani's legal argument, Bank has not contested his factual statements. Bank has not shown that there is a genuine issue of material fact for trial. Summary judgment is appropriate.

Bank contends that Magnani should be denied his discharge for conduct in relation to the business of LanDesign, a non-debtor entity, including transfers of property which was not titled in Magnani's name and failure to disclose such transfers. Bank has two legal theories for this position, which the court will refer to as the "vested ownership rights" theory and the "alter ego" theory.

### Vested Ownership Rights Theory

Bank's first theory is based on its view of the nature of Magnani's interest in partnership property as a partner. *See* Documents 17 and 18, Brief and Statement of Material Facts, ¶¶ 2–12. Bank states that Magnani, as an 80% owner of LanDesign, had "vested ownership rights in partnership property and the right to receive partnership property upon dissolution." Statement of Material Facts, ¶ 4. Bank argues that LanDesign was dissolved prior to Magnani's bankruptcy filing, so that his right to receive partnership property would have been property of the estate. *Id.,* ¶¶ 5, 6. Bank further argues that various transfers by LanDesign, implemented by Magnani, diminished Magnani's estate to the detriment of creditors. *Id.,* ¶¶ 7–12.

■ Magnani's interest in LanDesign at the time of his filing was property of his bankruptcy estate. Property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). A debtor's interests in property are determined by reference to state law. *Johnson v. First National Bank of Montevideo,* 719 F.2d 270, 273–74 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

■ Iowa has codified the Uniform Partnership Act in Chapter 486 of the Code of Iowa (1997). Section 486.24 states:

The property rights of a partner are;

1. The partner's rights in specific partnership property.

2. The partner's interest in the partnership.

3. The partner's right to participate in the management.

The "partner's interest in the partnership" is "the partner's share of the profits and surplus, and the same is personal property." Iowa Code § 486.26. The nature of the "partner's rights in specific partnership property" is described in § 486.25. During the continuance of the partnership, an individual partner does not have rights in specific partnership property exclusive of the rights of the other partners. The partner is a co-owner of the property as a tenant in partnership. Iowa Code § 486.25(1). The partner's rights in specific property, are also subject to the rights of creditors of the partnership. Iowa Code § 486.25(2)(c).

■ "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business ." Iowa Code § 486.29. The court will assume LanDesign was dissolved one week before Magnani's Chapter 7 filing when LanDesign ceased operations, but even if LanDesign was not dissolved by cessation of business, the partnership dissolved by operation of law upon Magnani's filing. Iowa Code § 486.31(5).

■ Dissolution does not terminate a partnership. Termination occurs only after the winding up of the affairs of the partnership. Iowa Code § 486.30; *Gibson v. Deuth,* 270 N.W.2d 632, 635 (Iowa 1978). Neither does dissolution effect a change in a partner's interest in specific partnership property. A partner does not obtain a direct interest in partnership property upon the partnership's dissolution. Such property remains property of the partnership pending the winding up of partnership affairs. *Rodeck v. Olszewski (In re Olszewski),* 124 B.R. 743, 747 (Bankr. S.D.Ohio 1991) (citing Ohio Uniform Partnership Law equivalent to Iowa Code §§ 486.30, 486.31); *see also In re Kuper,* No. 86–

00685W (Bankr.N.D.Iowa Aug. 19, 1986) (debtor-partners may not claim exemptions from specific partnership property when partnership has not terminated).

For the purposes of bankruptcy, a partnership is a distinct legal entity separate from its partners. *In re Olszewski*, 124 B.R. at 746. A partnership is a "person" that may itself be a debtor under Chapter 7. 11 U.S.C. §§ 109(b), 101(41). In the bankruptcy case of a partner, property of the estate includes the debtor's partnership interest, but not the assets of the partnership. *E.A. Martin Machinery Co. v. Williams (Matter of Newman)*, 875 F.2d 668, 670 (8th Cir.1989); *Hopkins Illinois Elevator Co. v. Pentell (Matter of Pentell)*, 777 F.2d 1281, 1285 (7th Cir.1985); *In re Olszewski*, 124 B.R. at 746.

### Alter Ego Theory

Bank's second legal theory for denial of Magnani's discharge for conduct in relation to the partnership is Bank's argument that LanDesign was the alter ego of Magnani. This argument was raised but not developed in Bank's brief. Document 18, unnumbered page 3. At the hearing on the motion, counsel for Bank argued that Magnani should have disclosed transfers nominally made by LanDesign in his statement of financial affairs because the partnership was used as a mere conduit, and the business was operated as a "doing business as" arrangement. He argued that the partnership did not observe the formalities of partnership law. The evidence of that, he said, was the commingling of assets, titled in various names, and the listing of those assets on LanDesign's depreciation schedule (Bank's Exhibit W). As further evidence, he pointed to several payments made to Magnani's relatives shortly before the partnership was dissolved, purportedly in repayment of undocumented loans.

In *Dulbina of America, Ltd. v. Sklarin (In re Sklarin)*, 69 B.R. 949 (Bankr. S.D.Fla.1987), the court applied a similar theory to deny the debtor's discharge under § 727(a)(4). In *Sklarin* the debtor's discharge was denied on four grounds, including for false oath in failure to disclose his interest in corporations and failure to schedule the corporation's assets in his individual Chapter 7 case. The court found the corporations were alter egos of the debtor. *Id.*, 69 B.R. at 954–55. As this court commented at the hearing on Magnani's motion, the corporate alter ego doctrine does not seem to fit in the case of a partnership. The alter ego doctrine is used typically to impose personal liability on an individual shareholder for corporate debt and may also be used to reach corporate assets to satisfy individual debt. *Benson v. Richardson*, 537 N.W.2d 748, 761 (Iowa 1995). Bank, however, does not need to resort to an alter ego theory to reach assets of either LanDesign or Magnani. Bank had a security interest in the partnership's assets. Magnani is liable to Bank as a partner (Iowa Code § 486.15(1)(b)) and as a guarantor of LanDesign's debt.

Bank's argument is at odds with bankruptcy policy to construe the Code provisions for denial of discharge narrowly. *See MacLeod v. Arcuri (In re Arcuri)*, 116 B.R. 873, 878 (Bankr.S.D.N.Y.1990) (discharge objections must be construed strictly against the creditor and liberally in favor of the debtor). Partnership property, and transfers of that property, would appropriately be disclosed in the schedules and statement of financial affairs of a partnership in bankruptcy. It seems that a debtor should be able to choose to omit a separate entity's transactions from his individual schedules without running the risk of misjudging whether a bankruptcy court would later determine the entity is an alter ego. Bank has remedies under § 523 for any alleged fraud on it by Magnani.

Nor has Bank raised facts that would lead the court to find the partnership a sham. Under Iowa law, property may be partnership property even though title is taken in the name of an individual partner. *Matter of Estate of Allen*, 239 N.W.2d 163, 166 (Iowa 1976) (quoting *Lamp v. Lempfert*, 259 Iowa 902, 146 N.W.2d 241 (1966)); *see also Beck v. Rounds*, 332 N.W.2d 109, 110 (Iowa App.1982) (farmers who pooled separately owned equipment and agreed to share profits and losses were operating as joint

venture or partnership). Whether property is partnership property depends upon the intent of the parties, as shown by facts including the source of the funds to purchase the property. *Estate of Allen*, 239 N.W.2d at 166–67; Iowa Code § 486.8(2).

Moreover, Bank itself has treated LanDesign assets as partnership property. After Magnani filed his Chapter 7 petition, Bank negotiated a surrender of LanDesign property which the Bank then liquidated. If the property had been Magnani's individual property, the action would have violated the automatic stay. Because Bank is not a secured creditor of Magnani, it would have been entitled only to a pro rata share in that property. For the foregoing reasons, therefore, the court will analyze Magnani's motion for summary judgment assuming that the property at issue was the property of LanDesign and that transfers were made by Magnani acting as a partner of LanDesign and not individually.

### § 727(a)(2)

■■■■ A debtor may be denied a discharge for fraudulent transfers of "property of the debtor" or "property of the estate." 11 U.S.C. § 727(a)(2). The transfer of property of a non-debtor entity is not grounds for denial of discharge under § 727(a)(2), even if the transfer was made with fraudulent intent. *Vinciulla v. Ferrato (In re Ferrato)*, 156 B.R. 83, 87 (Bankr.M.D.Fla.1993) (discharges not denied under § 727(a)(2); transfer of inventory of partnership, although done with fraudulent intent, was not transfer of property of debtor-partners); *MCorp Management Solutions, Inc. v. Thurman (In re Thurman)*, 901 F.2d 839, 841 (10th Cir. 1990) (50% shareholder's transfer of assets of the corporation could not be grounds for § 727(a)(2)(A) action); *CIT Group/Factoring Manufacturers Hanover, Inc. v. Srour (In re Srour)*, 138 B.R. 413, 419–20 (Bankr. S.D.N.Y.1992) (allegation that debtor caused his corporation to transfer its assets is legally insufficient under § 727(a)(2)(A), even if debtor acted in fraud of creditors); *see also E.A. Martin Machinery Co. v. Williams (Matter of Newman)*, 875 F.2d 668, 670–71 (8th Cir.1989) (debtor-partner's transfer of partnership property not avoidable under

§ 549 because not a transfer of property of the estate). Magnani is entitled to summary judgment on Bank's claim under § 727(a)(2).

### § 727(a)(3)

■■■ A debtor may be denied a discharge for failure to maintain books and records from which "the debtor's financial condition ... might be ascertained." 11 U.S.C. § 727(a)(3). Courts have held that an individual debtor may be denied his discharge for destruction of or failure to maintain books and records which would have been relevant to the debtor's financial condition, even if the books and records were those of a separate entity such as a partnership or corporation. *see, e.g., Matter of Esposito*, 44 B.R. 817, 827 (Bankr.S.D.N.Y.1984) (debtor denied discharge under §§ 727(a)(3) and (a)(7) for destruction of books of corporation he controlled); *see also* 6 Collier on Bankruptcy 727.03[3][e] at 727–32 (15th ed. rev. 1997) (all books and records "necessary to proper understanding of debtor's financial condition" come within this section); *but see Insurance Co. of North America v. White (In re White)*, 177 B.R. 110, 114–15 (Bankr. M.D.Fla.1994) (partner kept adequate books of partnership; even if he had not, individual's discharge should not be denied on basis of lack of records of separate entity).

■■■ Bank's claim under § 727(a)(3) is essentially a recitation of the statute. *See* Amended Complaint, ¶ 8. Magnani stated, in support of his motion for summary judgment, that he has surrendered all of LanDesign's records to the Bank. Affidavit, ¶¶ 6, 18. Bank has not raised an issue of fact in relation to this claim. The court concludes Magnani is entitled to summary judgment on Bank's claim under § 727(a)(3).

### § 727(a)(4)

■■■ A debtor may denied a discharge, under § 727(a)(4), for false statements in his statement of financial affairs, which is signed under penalty of perjury. A false oath must involve an intentional untruth in a matter material to the debtor's bankruptcy case. *Federal Land Bank of Omaha v. Ellingson (In re Ellingson)*, 63 B.R. 271, 276 (Bankr. N.D.Iowa 1986). The subject matter of an

omission is not material unless it relates to the debtor's personal transactions, or concerns the discovery of assets, financial dealings, or the existence and disposition of the debtor's property. *Palatine National Bank v. Olson (In re Olson)*, 916 F.2d 481, 484 (8th Cir.1990). While a debtor may be denied a discharge under § 727(a)(4) for failure to schedule his interest in a separate business entity, failure to schedule property belonging to another entity is generally not grounds for denial of discharge. *Compare In re Olson*, 916 F.2d at 484 (debtor's omission of interest in dinner theater was material because it related to his business transactions and the extent of his estate), *with Applebaum v. Henderson (In re Henderson)*, 134 B.R. 147, 160–61 (Bankr.E.D.Pa.1991) (omission of assets owned by his corporations and transfers of corporate assets not relevant to debtor's case). In *Vinciulla v. Ferrato (In re Ferrato)*, 156 B.R. 83, 87–88 (Bankr.M.D.Fla.1993), the court applied this distinction when it denied debtors their discharge for false oath. Two of the debtor-defendants had formed a partnership to run a business. The court denied their discharges for failure to disclose their partnership interest. The remaining debtor-defendant, Donna Ferrato, had not entered into the partnership. Because she held a direct interest in the inventory of the business, the court denied her discharge for failure to disclose a transfer of that property.

■ Bank alleges in paragraph 9(a) of the complaint that Magnani made a false oath by omitting information from his statement of financial affairs. The alleged omissions were not material to Magnani's case because they involved assets and transactions of the partnership, a non-debtor entity. Magnani disclosed his interest in the partnership on his Schedule B in answer to question 13. Magnani is entitled to summary judgment on Bank's claim under § 727(a)(4).

### § 727(a)(5)

■ A debtor may be denied a discharge for failure to explain satisfactorily a loss of assets "to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). Courts have held that in order to maintain an action under § 727(a)(5), a creditor must show the lost

assets were property of the debtor and not of another entity. *Riumbau v. Colodner (In re Colodner)*, 147 B.R. 90, 94–95 (Bankr. S.D.N.Y.1992); *Bacon v. Hyers (Matter of Hyers)*, 70 B.R. 764, 770 (Bankr.M.D.Fla. 1987); *cf. First City Bank—Central Park v. Powell (In re Powell)*, 88 B.R. 114, 117 (Bankr.W.D.Tex.1988) (debtor jewelry company, through its principal, failed to account for loss of its inventory; individual denied discharge under § 727(a)(7)); *but see Island Bank of Collier County v. Gill (In re Gill)*, 159 B.R. 348 (Bankr.M.D.Fla.1993) (50% shareholder denied discharge for failure to disclose ownership interest in corporation and for failure to explain loss of corporation's property).

■ Even assuming that failure to explain the loss of LanDesign's assets could have been a ground to deny Magnani's discharge under § 727(a)(5), the court concludes that Magnani is entitled to summary judgment on this claim. Bank alleges that Magnani has failed to explain satisfactorily the loss of inventory and accounts receivable. Complaint, ¶ 10. Magnani states that he has explained the loss of assets and further states that the apparent discrepancy in inventory values is accounted for by the difference between cost price and the price paid at the liquidation sale arranged by the Bank. Affidavit, ¶ 33. Bank, in its statement of material facts, recited verbatim its claim under § 727(a)(5) and attached excerpts from a deposition of Magnani as Exhibits I and J. Statement of Material Facts, ¶ 18. Magnani stated in his deposition that LanDesign's inventory and accounts receivable decreased in the time before his bankruptcy filing because of reduced business, that he had been ill, that in August of 1996 a receivable in the amount of $50,824 would have been paid, that he estimated the value of inventory turned over to the Bank was between $80,000 and $100,-000, and that he did not know what was bid on the property. Bank's Exhibits I and J. Bank has essentially relied on its allegations in the complaint and has not identified an issue for trial in relation to the claim under § 727(a)(5). The court concludes that Magnani is entitled to summary judgment on this claim.

IT IS ORDERED that Defendant's Motion for Summary Judgment on the claims of Firstar Bank under §§ 727(a)(2), 727(a)(3), 727(a)(4), 727(a)(5) and 727(a)(7) is granted. The clerk shall set a hearing for choosing a trial date on the remaining claims.