**In re Angela TRAFFORD, Debtor.**

**Doris A. Reynolds, Plaintiff,**

v.

**Angela Trafford, Defendant.**

**Bankruptcy No. 9:05–bk–26922–ALP.**
**Adversary No. 9:06–ap–00233–ALP.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Sept. 27, 2007.

Edward R. Miller, Richard J. Hollander, Miller and Hollander, Naples, FL, for Plaintiff.

Michael R.N. McDonnell, Naples, FL, for Defendant.

### AMENDED FINDINGS OF FACTS, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE GENESIS of this present controversy is a suit filed by Doris A Reynolds (Reynolds or Plaintiff) against Angela Trafford (Debtor) in the Circuit Court in and for Collier County, Florida. The suit terminated in a Judgment entered against the Debtor and in favor of Reynolds in the amount of $218,442.00 (Plaintiff's Exhibit No. 41). Shortly after the entry of the Judgment the Debtor on October 14, 2005, filed her Petition for Relief under Chapter 7 of the Bankruptcy Code and sought relief of her obligations, including her obligation to pay the Judgment mentioned, through the general bankruptcy discharge.

The specific issue presented to this Court is Reynolds' challenge to the Debtors right to obtain a discharge. Reynolds filed a five-count Complaint against the Debtor on May 17, 2006. In Count I of her Complaint, Reynolds alleges that the Debtor, with intent to hinder, delay or

defraud a creditor, transferred within one year of the filing of her bankruptcy $22,000.00 to her State Court attorney from funds held in escrow for Debtor's benefit. The Debtor used funds from her SEP Plan to pay down her mortgage, concealed the whereabouts of an emerald ring, transferred funds to her children without consideration and transferred funds to her solely owned corporation from her SEP account from assets claimed to be assets of the estate.

Reynolds contends that by virtue of Section 727(a)(2)(A) of the Bankruptcy Code the Debtor shall not be entitled to the benefits of a general bankruptcy discharge.

The claim in Count II is based on Section 727(a)(2)(B) of the Bankruptcy Code and alleges that the Debtor transferred funds which were property of the estate in her possession from her bank account to pay her mortgage and living expenses and also into her SEP Account. In addition, Reynolds alleges that on the date the Debtor filed her voluntary Petition for Relief, the Debtor's Merrill Lynch Account No. 716–71702 had an ending balance of $27,783.00. On March 31, 2006, this Court entered its Order Sustaining Trustee's Objection to the Debtor's claim of exemption concerning the Merrill Lynch account (Doc. No. 51). Based on the Order entered by this Court on March 31, 2006, finding that the funds held in the Debtor's Merrill Lynch account are property of the estate and that the Debtor transferred or disposed of the funds after the commencement of her Chapter 7 case, Reynolds requests that a judgment be entered in her favor and contends that the Debtor's discharge should be denied based on Section 727(a)(2)(B).

The claim in Count III is based on Section 727(a)(3) of the Bankruptcy Codes and basically alleges that the Debtor has failed to preserve or keep adequate books and records, documents and papers from which her financial condition could be ascertained. Based on this alleged failure, Reynolds contends that the Debtor shall not be entitled to a discharge pursuant to Section 727(a)(3).

The claim in Count IV is filed pursuant to 11 U.S.C.S 727(a)(4) of the Bankruptcy Code and alleges that the Debtor in executing her Petition, Schedules and Statement of Financial Affairs, knowingly and fraudulently committed false oath by her failure to disclose the following assets:

a. Debtor failed to disclose in Schedule B her ownership interest in Self–Healing, Inc.

b. Debtor failed to disclose on her Statement of Financial Affairs the $22,000.00 payment to Michael McDonald, Esq., a general unsecured creditor of the Debtor, within the 90 days preceding the date of filing.

c. Debtor failed to disclose in Schedule B the amount of $22,000.00 which was held for the Debtor's benefit.

d. Debtor failed to disclose in Schedule B her ownership in a diamond pendant and a string of pearls, with a value in the aggregate to exceed $1,000.00.

e. Debtor failed to disclose in Schedule G her leasehold interest in at least two storage units located in Old Naples Storage.

f. Debtor failed to disclose in Schedule B the contents in the storage units referred to above, including an inventory in books for commercial sale believed to be in excess of 1000 volumes.

g. Debtor failed to disclose in her Statement of Financial Affairs a contested lawsuit in the Circuit Court in and for Collier County,

Florida that was pending within the past year, and reduced to a Judgment against her after a trial by jury in an amount exceeding $200,000.00.

h. Debtor failed to disclose on Schedule B, office equipment and furniture believed to be located in the Debtor's residence.

i. Debtor failed to disclose on her Statement of Financial Affairs, the closure of a Money Market Account held with AmSouth Bank which was closed within one year preceding the date of filing.

j. Debtor failed to disclose on her Statement of Financial Affairs, the sale of certain assets, previously held in a storage unit leased by the Debtor in Old Naples Storage within the year preceding the date of filing.

k. Debtor failed to disclose on her Statement of Financial Affairs, certain assets gifted or transferred to the former house servant of the Debtor in the year preceding the date of filing.

l. Debtor failed to disclose on her Statement of Financial Affairs, certain assets gifted or transferred to her son in the year preceding the date of filing.

m. Debtor failed to disclose on Schedule B, the ownership of her purebred dog and cat.

n. Debtor failed to disclose the information required in paragraphs 19 through 26 of her Statement of Financial Affairs.

Based on the above alleged failures, Reynolds requests a judgment in her favor and contends that the Debtor shall not be entitled to a discharge pursuant to Section 727(a)(4).

In Count V, Reynolds contends that the Debtor failed to comply with the lawful order of this Court and to turn over to the Trustee certain properties and monies which were in her bank accounts on the date of filing. Based on this, Reynolds requests a judgment in her favor against the Debtor and further contends that the Debtor shall not be entitled to a bankruptcy discharge pursuant to 11 U.S.C. § 727(a)(5).

In due course, the Debtor filed an Answer to the Complaint and set forth certain admissions and some general denials. She also set forth affirmative defenses which are basically a denial of Reynolds allegations and that technically do not comply with Rule 8 of the FED. R.CIV. P., as adopted by Rule 7008 of the F.R.B.P. which specifies the affirmative defenses permissible. On August 25, 2006, this Court entered an Order and granted Reynolds' Motion to Dismiss Affirmative Defenses (Doc. No. 18).

■ The Debtor's position is that she did not review the schedules before filing them and frankly does not remember any of these items since she is not familiar with the requirement of the law, or most of the omissions were done pursuant to advice of counsel. It is well determined that none of these defenses are viable or acceptable and advice of counsel is no defense. As stated by this Court in the case of *In re Muscatell*, 113 B.R. 72 (Bankr.M.D.Fla. 1990).

... advice of counsel to the effect that property which the bankrupt undoubtedly owned was not required to be scheduled was not an acceptable defense for failure to schedule the property since such advice related to a plain, palpable and transparent fact.

*In re Muscatell*, 113 B.R. 72 (Bankr. M.D.Fla.1990)

At the conclusion of the Final Evidentiary Hearing, this Court announced that the record failed to sustain the claims as asserted in Count III and Count V of the Plaintiff's Complaint, and the same would be dismissed.

■■■ This leaves for this Court's consideration the claims asserted in Counts I, II and IV of the Complaint. It has long been recognized, even prior to the adoption of the Bankruptcy Code, that the provisions dealing with discharge of debtors must generally be construed liberally in favor of the debtor and strictly against those who challenge the debtor's right to a discharge. *Matter of Garman,* 643 F.2d 1252 (7th Cir.1980)(stating that the Act was meant to discharge only the honest debtor; should be liberally applied to protect the bankrupt only where there is no intent to violate its provisions).; *Kentile Floors, Inc. v. Winham,* 440 F.2d 1128 (9th Cir.1971). However, it is equally true that the discharge privilege is reserved only to honest debtors. Accordingly, the burden of establishing any of the specific grounds set forth in Section 727(a) of the Bankruptcy Code which would warrant the denial of the discharge, is on the party challenging the debtor's right to a discharge. F.R.B.P. 4005. The burden is no longer by clear and convincing evidence, but a mere preponderance of the evidence is sufficient to prevail and block the debtor's right to a discharge. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The claim in Count I is based on Section 727(a)(2)(A) which provides as follows:

**11 USC § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless— . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; . . .

Under this particular Section of the Code, the objecting party has the burden to establish one of the five requirements set forth in the Section. Unfortunately, the claim as pled recites all conduct described in the Section, not an uncommon practice even though each specific conduct has its own specific meaning and the concepts are not interchangeable.

The record is clear that the evidence, as presented to this Court, only relates to the charge of a transfer and concealment, but there is nothing which would support the Plaintiff's assertion with respect to the removal, destruction, or mutilation of estate property.

■■■ The claim in Count I, as stated earlier, alleges a fraudulent transfer with intent to hinder, delay or defraud creditors. It is pled that the Debtor transferred $22,000.00 to her State Court attorney from funds held in escrow for the Debtor's benefit. In addition, the record reveals the Debtor used funds from her SEP Plan to pay down her mortgage, concealed the whereabouts of an emerald ring, transferred funds to her children without consideration and transferred funds to her solely owned corporation from her SEP account from assets claimed by the Debtor to be assets of her estate. In addition to the foregoing, counsel for Reynolds, during his direct examination of the Debtor at the Final Evidentiary Hearing, presented evidence to this Court of transfers involving some unspecified miscellaneous transfers of funds made to the Debtor's children

without the Debtor receiving any consideration in return. However, this Court finds that no evidence was presented by Reynolds' counsel concerning the relevant transfers of funds from the Debtor's SEP account to the Debtor's corporation. In sum, the evidence as presented in support of this claim as set forth in Count I of the Plaintiff's Complaint is far from being convincing and persuasive and, therefore, this Court is satisfied that the claim in Count I has not been established with the requisite degree of proof.

■ The claim in Count II alleges postpetition transfers and is based on Section 722(a)(2)(B) which provides as follows:

**11 USCs 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—. . .

   (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

    (B) property of the estate, after the date of the filing of the petition;

    . . .

The only evidence presented by the Plaintiff as asserted in Count II of the Complaint is a transfer from the Debtor's Merrill Lynch account which neither identifies the time and place of the transfer of the funds nor the recipient or disposition of those funds. In sum, the evidence woefully lacks the specificity required to sustain a claim of postpetition transfer under Section 727(a)(2)(B) of the Bankruptcy Code.

The picture is totally different concerning the claims set forth in Count IV which alleges a false oath in bankruptcy under Section 727(a)(4)(A), which provides as follows:

**11 USC § 727. Discharge**

   (a) The court shall grant the debtor a discharge, unless—. . .

    (4)the debtor knowingly and fraudulently, in or in connection with the case—

    (A) made a false oath or account;

    . . .

Before discussing the facts relevant to this particular claim, the applicable principles governing proceedings that challenge the Debtor's right to a discharge in general should be briefly noted.

■ There is no question that Section 727(a)(4) was established to ensure that the trustee and the creditors would receive reliable information in order to assist the trustee in the administration of the estate. *Discenza v. MacDonald (In re MacDonald)*, 50 B.R. 255 (Bankr.D.Mass.1985). The statement of financial affairs and the schedules executed by the debtor under oath serve the crucial purpose of ensuring that all relevant and adequate information is available to the trustee.

■ In applying the standard and the elements necessary to establish a viable claim under Section 727(a)(4), the Eleventh Circuit, in the case of *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir.1984), held that a false oath is made even though the properties omitted are worthless, and the omission was, in fact, material. In the case of *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir.1974), the court held that even though truthful responses to the questions propounded by the attorney for the bank would not have increased the value of the estate, they were certainly material and essential for the discovery of what, if any, assets the debtor may have had. It is clear that the subject of false oaths is always material

and bears a relationship to the debtor's business transactions or estate. *In re Steiker*, 380 F.2d 765, 768 (3d Cir.1967). A debtor may not escape the charge of making a false oath by asserting that the admittedly omitted statement of financial information concerned a worthless business relationship or holding, and thus did not have to be disclosed. Such a defense was held to be specious. *Diorio v. Kreisler-Borg Construction Co. (In re Diorio)* 407 F.2d 1330 (2d Cir.1969). It makes no difference whether or not the debtor intended to injure his creditors; the creditors are entitled to judge for themselves what will benefit and prejudice them. *Morris Plan Industrial Bank v. Finn*, 149 F.2d 591 (2d Cir.1945); *Duggins v. Heffron*, 128 F.2d 546, 549 (9th Cir.1942).

To prevail on this claim the burden is on the plaintiff to establish that the debtor knowingly and fraudulently made a false oath and the oath is pertinent to a material fact. *In re Ingersoll*, 124 B.R. 116 (M.D.Fla.1991). The intent is always difficult to prove by direct evidence since the debtor seldom confesses that he intended to commit a false oath. The circumstances surrounding the fact may warrant the inference that the debtor, in fact, committed willfully and knowingly a false oath. *In re Sklarin*, 69 B.R. 949 (Bankr. S.D.Fla.1987). An occasional omission of facts is seldom sufficient to establish a claim of false oath. However, a pattern of conduct showing numerous and important omissions show a clear disregard of veracity from a debtor in complying with the requirement of completing the schedules and the statement of financial affairs. Numerous omissions in statement of financial affairs and schedules taken together warrant the conclusion of a reckless disregard for the truth by the debtor. *In re Clawson*, 119 B.R. 851 (Bankr.M.D.Fla.1990). Such reckless disregard for the truth is recognized to be equivalent to fraudulent intent to commit a false oath. *In re Sapru*, 127 B.R. 306 (Bankr.E.D.N.Y.1991).

It is without dispute that an occasional omission from schedules will seldom be accepted as a satisfactory basis to establish the claim of a false oath, and some innocent omissions due to oversight may be excused. However, numerous omissions that display a pattern of misleading conduct are sufficient to establish a fraudulent false oath. See *Boroff v. Tully (In re Tully)*, 818 F.2d 106 (1st Cir.1987).

In the present instance the claim of a false oath is based on the undisputed facts that the Debtor omitted from her Schedules and Statement of Financial Affairs numerous omissions. The Debtor failed to list three AmSouth Bank accounts totaling $33,794.14; 3,800 volumes of books and 705 tapes available for sale on her website at a total retail price of $80,544.50; ownership of a pure breed dog and cat; approximately $17,000.00 in gifts transferred to her sons, Michael Ferrara and Richard Ferrara; early withdrawal from her SEP Plan in the sum of $55,940.00 and approximately $13,000.00 in payments made to selected creditors within 90 days of filing.

In addition to the above, the Debtor failed to schedule her 100% interests in her corporation, Self Healing, Inc., including office equipment, such as, a fax machine, computer, printer, adding machine, rental agreements for two storage units where the books and tapes were stored; a $132,437.00 account receivable due to the Debtor from her corporation; a $1,000.00 transfer from the Debtor to her corporation within one year of filing her Petition, coupled with another $5,000.00 transfer within six months of filing and her interest in a safe deposit box located at AmSouth Bank. The Debtor also listed in her Statement of Financial Affairs that her corpora-

tion, Self Healing, Inc., ceased doing business in 2003, when in fact the Debtor continued paying employees salaries through the end of 2005. Furthermore, the Debtor continued to pay the business expenses of the corporation for 2005 and has continued to renew the corporation franchise and business license.

Applying the principles to the record of this case, the Debtors omissions on her Schedules and Statement of Financial Affairs are too numerous to recite seriatim. This Court will merely highlight the significant omissions and untruthful statements on the Schedules and the Statement of Financial Affairs.

On the Schedules the Debtor indicated that she had no funds on deposit in banks when it is clear from the evidence that on the date of the filing the Debtor had the following amounts in the AmSouth Bank.

Acct. No. 9590 $19,683.38 (Plaintiff's Exhibit 16–2)
Acct. No. 9051 $12,095.17 (Plaintiff's Exhibit 24a)
Acct. No. 6166 $ 2,015.59 (Plaintiff's Exhibit 21–1)

Total          $33,794.14

While the Debtor filed her Petition as a consumer debtor, the Debtor was up to the date of filing, the President and 100 percent stockholder of her corporation, Self Healing, Inc. Self Healing, Inc., apparently involved person-to-person counseling and writing and publishing of numerous tapes and copyrighted books. The Debtor through her website offers these books and tapes for sale to the public. The books and tapes offered by her for sale are valued at $80,544.50. (Trial Transcript, Pages 101–102).

The Debtor also admitted that she owned jewelry which was described in her Schedules as costume jewelry which, in fact, at the time of the filing she owned a diamond pendant and a pearl necklace valued at approximately $1,200.00. On her Statement of Financial Affairs, the Debtor in answering Question No. 2: "income from any source" answered in the negative when, in fact, she withdrew $55,940.00 from her IRA account one year before filing her voluntary Petition for Relief. (Plaintiff's Exhibit 54–1). The trial between the Plaintiff and Defendant began on September 12, 2005 and ended on September 16, 2005. In addition to the above, the Debtor in September 2005, sold her stock in her SEP Plan held with Merrill Lynch and withdrew the sum of $28,199.30. (Plaintiff's Exhibit 36–2). The Debtor was unable to explain what happened to her withdrawals in the sum of $41,921.44 from her Merrill Lynch accounts. (Trial Transcript, Page 77). There are also several different omissions some of them of no significance, although in this connection one should state that the values of the assets is for the Trustee to determine, not for the Debtor. And even if a Debtor believes it is worthless, the same should be scheduled.

In sum, based on the foregoing, the evidence is overwhelming to support the claim of false oath under Section 724(a)(4) and, therefore, the challenge should be sustained. The Debtor is not entitled to a discharge.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the claim as asserted in Count IV of the Complaint pursuant to 11 U.S.C. § 727(a)(4) be, and the same is hereby, granted and the claims set forth in Count I pursuant to 11 U.S.C. § 727(a)(2)(A) and Count II pursuant to 11 U.S.C. § 727(a)(2)(B) of the Complaint be, and the same shall be dismissed with prejudice. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor's Discharge be, and the same is hereby, denied pursuant to 11 U.S.C. § 727(a)(4). It is further

ORDERED, ADJUDGED AND DECREED that there is due and owing to the

Plaintiff, Doris A. Reynolds, from the Defendant, Angela Trafford, the sum of $218,442.00, in addition to costs in the amount of $250.00, for a total judgment in the amount of $218,692.00. The total judgment amount shall accrue interest pursuant to law, for all of which let execution issue.

A separate final judgment shall be issued in accordance with the foregoing.