M. E. WILLIAMSON v. N. FONTAIN, Ex'r, etc.

PARTNERSHIP REALTY. It is the settled rule of property in this State that the real estate of a partnership is held as personalty for the purposes of the partnership, but where not needed for such purposes it descends, as other real estate, to the heir. This being the rule, the court holds that the widow of a deceased partner cannot treat the real estate as personal property, but that it goes to the heir as realty.

Cases cited: McAlister v. Montgomery, 3 Hay., 9; Woods v. Yeatman, 6 Yer., 20; Piper v. Smith, 1 Head, 97.

FROM SHELBY.

Appeal from the Chancery Court. W. L. SCOTT, Chancellor.

KORTRECHT & CRAFT for complainant.

STEPHENS & SMITH for defendant.

NICHOLSON, C. J., delivered the opinion of the court.

Complainant is the widow of Samuel B. Williamson, who died in Shelby county in 1869, leaving complainant and defendant, Samuel B. Williamson, an infant son, his only child, surviving him. He was a member of the mercantile firm of Williamson, Hill & Co., which firm owned, at the time of the death of S. B. Williamson, valuable real estate, received by them in satisfaction of debts due the firm. He left a will, which was duly proven, and of which his widow and partner, N. Fontain, were qualified as executrix and executor. The widow dissented from the

will, and now claims that she is entitled to her distributive share of the real estate of the firm as personal property. It is conceded that the real estate of the firm is not needed for payment of its debts, and the question thus presented is, whether the interest of S. B. Williamson in the partnership real estate descends to his heir, or continues to be personalty and subject to the laws of distribution.

It is not denied in the argument that the current of decisions in Tennessee is that so much of the real estate of a partnership as is not needed for the payment of its debts, descends as realty to the heirs; but it is said that these decisions have been made accompanied with such intimations of doubt as to their correctness, that the question may now be properly revived and reconsidered.

It is true that in the case of *McAlister* v. *Montgomery*, 3 Hay., 9, in which the construction of the act of 1784 was given, the direct question now presented was not necessarily involved. It is also true that in the case of *Woods* v. *Yeatman*, 6 Yer., 20, the court saw no reason to depart from the principle of the case of *McAlister* v. *Montgomery*, and adopted the opinion given in the Chancery Court by Chancellor Reese, who only followed the case of *McAlister* v. *Montgomery* because he felt himself bound by the holding of the superior court.

The question was again presented in the case of *Piper* v. *Smith*, 1 Head, 97, where the court was urged on to review and correct the former decisions. To this the court said: "But an imperfect rule of

property having been thus settled, and so long acquiesced in, should not now be disturbed, even if we consider it originally wrong. It is easy to see the mischief and hardship that would result from shaking or unsettling fixed rules of property, in view of which men have acted and made investments for so great a length of time. A rule that might act as we would desire in a particular case, would work injustice in many of the cases—they must be general."

We think the soundness of these considerations has been recognized and acquiesced in ever since the case of *Piper* v. *Smith,* and that it should now be regarded as a fixed rule of property in the State, that the real estate of a partnership is held as personalty for the purposes of the partnership, but when not needed for such purposes it descends as other real estate. Such was the holding of this court in an unreported case decided in 1872.

But it is insisted that it may be fairly deduced, from the facts and circumstances of the present case, that the lands acquired by the firm in satisfaction of debts due to it were not held as realty, but as assets of the partnership, that is, as personalty, and that they could not be converted into realty by the mere fact of the dissolution of the firm by the death of one of the partners. By reference to the pleadings and proof, it appears that the lands were purchased by the firm as a mode of securing and collecting debts due to the partnership, and not by way of converting the assets of the firm in lands to be held as realty. It further appears that the partnership held.

Williamson *v.* Fontain.

and regarded the lands so acquired as partnership assets, subject to be used and applied for partnership purposes. But it does not appear that there was any agreement among the partners, either express or implied, as to how the lands were to be regarded and disposed of in the event of a dissolution by the death of one of the partners. In other words, there was no express understanding or implied agreement which looked beyond the existence of the partnership in regard to the lands, whether as realty or personalty. All that appears is, that while the partnership lasted, the parties understood and regarded the lands as personalty or partnership assets.

In this state of the facts, the question is not presented as to what would be the legal effect of an express or implied agreement among the partners as to the disposition of partnership lands upon the dissolution of the partnership in consequence of the death of one of the partners; but the single question presented is, whether lands owned by a partnership, and held by it as partnership assets, upon the dissolution of the firm by the death of one partner, continue, after such dissolution, to be partnership assets to be distributed as personalty, or whether they are then treated as realty and descend as such. This is the exact question which we have determined to have been heretofore settled by the adjudications in our own State.

It follows that there is nothing in the facts and circumstances of the present case which can take it out of the operation of the principle that the lands

in the present case descend to the heir, and are not subject to distribution as personalty. The Chancellor so held, and we affirm his decree with costs.