## ERNEST BROWN et al. v. BESS BROWN et al.
### —320 S. W. (2d) 721.

Middle Section, Nashville.   October 31, 1958.

Certiorari denied by Supreme Court January 23, 1959.

Ray Hollis, Waynesboro, for complainants.

R. R. Haggard, Jr., Waynesboro, for defendants.

## I.

SHRIVER, J.  This case involves the question as to whether real estate deeded to, and standing in the name of a partnership, passes as personalty or as realty on the death of the partners.

The Chancellor held that it passed as realty and the complainant who insisted that, as an asset of the partnership, it passes as personalty, appealed and has assigned errors.

## II.

As was stated by the Chancellor in his finding of facts and opinion, the original bill was filed to sell for partition a tract of 75 acres of land situated in the 6th Civil District of Wayne County, Tennessee, and for determination of the rights and interests of the parties under a deed executed on the 3rd day of October 1932 and of record in the Register's Office in Wayne County.

In the course of the proceedings the cause was referred to the Clerk and Master to ascertain and report who were the owners of the premises sought to be sold and the respective rights, titles and interests of the parties therein and what share or part belonged to each.

In his report the Clerk and Master stated:

"The question presented by the pleadings is whether or not the lands sought to be sold and described in the bill descended to the heirs of J. R. and G. R. Brown, or whether or not said lands descended as personal property, raises a question of law, which cannot be determined by the undersigned Clerk and Master, so that in response to the reference as to the rights, titles and interests of the parties in said lands this report is made so that upon a determination of the rights of the parties, the proceeds of the land can be distributed in accordance with such decree as the facts and the law may warrant."

The report then sets forth the rights and interests of the parties in the event the land is treated as real estate and their rights and interests in the event it is treated as personal property.

He also reported that it would be manifestly to the advantage of the parties that the land be sold instead of partitioned in kind, and there being no exception to the report, it was confirmed and a sale of the land was had under the orders of the Court.

Hence, this suit involves a distribution of the proceeds of said sale, amounting to $4,400, less fees and costs.

There is no dispute as to the relationship of the parties and it is admitted by all that the property in question was conveyed by Horace Whitehead to Brown Brothers, a partnership, composed of Grady and Russell Brown. A certified copy of the deed of conveyance was made exhibit to the answer of Hester Dabbs who insists that she is entitled to the share of Elsie Brown, widow of G. R. Brown, deceased. The granting clause in the deed under which the property was held is as follows:

"That I, Horace Whitehead, a single man, have this day bargained and sold, and do hereby transfer and convey unto Brown Bros., a partnership, the following described tract or parcel of land, situated in the 6th Civil District of Wayne County, Tennessee, and bounded as follows;" (Here follows the description)

The habendum clause is as follows:

"To Have and To Hold said land unto the said Brown Bros., a partnership, its successors and assigns forever."

The depositions of Horace Whitehead, the man who conveyed the property in the first instance, and of Burton Downey and Maud Brown were taken in obedience to

the order of reference and there is no material dispute in the-facts.

Horace Whitehead testified that he conveyed the tract in question here to Brown Brothers consisting of Grady Brown and Russell Brown, said deed being dated October 3, 1932. He described the land and buildings on it and was of opinion that it would be advantageous to sell rather than to partition it. On re-cross examination the witness was asked the question:

"Mr. Whitehead, when these people purchased the property from you, do you know anything about the arrangements they made for the money with which they bought it?"

He, answered, "No, sir."

He was then asked if they paid him in cash or not and he answered:

"Well, the best I remember I took notes for Three Hundred something like that on other people and the balance in cash."

He stated that he believed that one of the notes was on Tim Rasbury, and the other on Hyder Rasbury, and he said that he did not remember the amounts of the notes. But when asked the question,

"Do you remember to whom these notes were made payable?" He answered, "Brown Bros., I believe."

In answer to the question as to whether he remembered distinctly that the notes were made to Brown Bros., he stated:

"No, sir, it could have been that they were made to Grady or Russell."

He was then asked and answered as follows:

Q. "They could have been made to other parties and endorsed by them over to you? A. No, sir, they were made for grocery accounts, was my understanding when I took them."

Mrs. Maud Brown testified that her two brothers were G. R. (Grady) Brown and C. R. (Raymond) Brown. She testified that both brothers are deceased. She also testified that she lived on the 75 acre tract in question and that it had an old residence on it. She then described the type of land in the tract.

The record is silent as to the extent of the partnership of Brown Bros. It is shown that they operated a general merchandise store in the neighborhood where the property is located and that the store was on a separate tract from the 75 acres involved here.

The record is silent as to whether or not the farm was used by the partnership in furtherance of the partnership business.

The partnership was composed of J. R. (Russell) Brown and G. R. (Grady) Brown. J. R. Brown died in February 1949 leaving as his widow Maud Brown. G. R. Brown died in April 1940 leaving Elsie Brown as his widow and Elsie Brown died in November 1956 leaving one sister, appellant, Hester Dabbs.

It also appears that the store building, owned by Brown Bros., was conveyed to Grady and Russell Brown by one I. W. Luna and that this land was on both sides of the old highway, but it is not shown when the store

was sold nor when Brown Bros. ceased to do business as a partnership, except the testimony as to the dates of the deaths of the two parties.

In other words, there is no proof in the record as to whether Russell Brown, who survived his brother, wound up the partnership of Brown Bros. after the death of his brother in 1940, or whether the business was carried on by Russell Brown until his death in 1949.

The Chancellor in his opinion states:

"It will thus be seen that the sole question for determination now is whether the proceeds arising from the sale of the real estate is to be distributed as partnership property as personalty or whether it is to be distributed as real estate."

He also states:

"As far as the record shows, the partnership of Brown Bros. was never administered under the partnership law. The last surviving partner lived approximately nine years after the death of his co-partner, G. R. Brown, during which time the deceased partner's wife continued to occupy and live on the tract of land involved in this cause, as her home, while the other partner lived on a different tract, such circumstances are not indicative of an intention on the part of the respective brothers that the real estate, which was not used for partnership purposes nor needed to pay the liabilities, was ever intended as partnership property."

After discussing a number of authorities, including Cultra v. Cultra, 188 Tenn. 506, 221 S. W. (2d) 533, which

he distinguishes from the case at bar, the Chancellor then concludes:

"From the record in the instant case my opinion is that it was not the intention of Brown Bros. that the farm of 75 acres involved in this case should be treated or regarded as partnership property. It was not needed or used in the grocery business in which Russell and Grady Brown were engaged. It was never considered by either of them as partnership property. It was not conveyed, or even considered, by the surviving partner in winding up the partnership affairs, so far as the record shows.

"So, from the facts and circumstances of this case, I hold that the farm herein involved was not partnership property, and that it was the intention of the partners that it be, and in fact was, held by Grady and Russell Brown as tenants in common."

### III.

The Uniform Partnership Act, Sec. 61-101 et seq., T. C. A. which was enacted in 1917 provides in part as follows:

61-107, (2) "Unless the contrary intention appears, property acquired with partnership funds is partnership property.

"(3) Any estate in real property may be acquired in the partnership name. Title so acquired can be conveyed only in the partnership name.

"(4) A conveyance to a partnership in the partnership name, though without words of inheritance, passes the entire estate of the grantor unless a contrary intent appears."

In an article in Vol. 21 Tenn. Law Review, page 202, entitled, "Partnership—Conversion of Realty Into Personalty", it is pointed out that most American jurisdictions prior to the Uniform Partnership Act conceded that, upon the death of a partner, the legal title to his share of the partnership realty descended directly to his heirs as tenants in common with the surviving partner. Such was the holding in the early cases, Yeatman's Heirs v. Woods, 14 Tenn. 20; Piper v. Smith, 38 Tenn. 93, and cases in several other jurisdictions, including Kentucky and North Carolina.

When necessary for partnership purposes, it was generally held that equity would imply a trust for the benefit of the surviving partner or partners. Such was the holding in Shanks v. Klein, 104 U. S. 18, 26 L. Ed. 635 and cases in several jurisdictions including Iowa and New York.

However, the Courts disagreed sharply as to the subsequent legal status of real estate when the partnership debts were paid and the equities adjusted between the partners.

In an early Tennessee case McAlister v. Montgomery, 4 Tenn. 94, our courts were in accord with other American decisions to the effect that when the partnership property was no longer needed for partnership purposes the implied trust was extinguished and the realty converted to its true form and descended to the heirs. Also see notes Ann. Cas. 1912D, 1213.

Subsequent decisions sustained the partial conversion theory. See Yeatman's Heirs v. Woods, Piper v. Smith, supra, also Jones v. Sharp, 56 Tenn. 660. This theory as

being the law in Tennessee was stated by Justice Nicholson in the following words:

> "It should be regarded as a fixed rule of property in this State, that the real estate of a partnership is held as personalty for the purposes of the partnership, but when not needed for such purposes it descends, as other real estate." Williamson v. Fontain, 66 Tenn. 212.

This theory of the partial conversion of partnership realty received acceptance because it was in accord with the existing laws of descent and distribution. Also, the legal nature of the realty was not disturbed any more than was absolutely necessary.

The English courts and a few American Courts, on the other hand, adopted the out and out conversion theory. The term "Out and out conversion" does not mean the conversion of realty into personalty for all purposes. Accurately speaking, it is treated as personalty only to the extent necessary to discharge the partnership debts and obligations, adjust the equities between the parties and then to distribute the partner's interests in the partnership. In other respects the realty retained its true character. The courts reasoned that the partners, upon formation of the partnership, impliedly agreed to convert all partnership property into money upon the dissolution of the firm. There being no other basis on which to maintain a distinction between realty and personalty, the intention of the partners was, therefore, to treat the realty as personalty for purposes of distribution as well.

Most jurisdictions recognized one qualification of this rule and that was where the articles of partnership pro-

vided that the realty should or should not be treated as personalty for purposes of distribution on dissolution.

It is to be noted that the Uniform Partnership Act does not expressly adopt either theory. A number of Courts that have construed the Act have held that the legislatures intended to adopt the English view. See Wharf v. Wharf, 306 Ill. 79, 137 N. E. 446, which is a leading case and one that our Supreme Court has quoted from with approval.

In reaching this conclusion the Courts have construed the language of the Act and have asserted that there is no reason why the status of real estate should be changed upon the dissolution of the partnership if it was no more than personal property during the life of the partnership. And if the intention of the drafters of the Act was to treat the partner's interest as realty, it would descend directly to his heirs, as before.

It is to be noted that under Sec. 61-124, T. C. A. a partner's right in specific partnership property is not subject to dower, curtesy, or allowances to widows, heirs or next of kin, which seems to indicate that the intention of the Act was to treat the partner's share as personalty for purposes of distribution.

The first Tennessee case after the passage of the Uniform Partnership Act, in which the question arose, was Marks v. Marks, 1 Tenn. App. 436, where it was said that Acts affecting title to realty had no retroactive effect. The case seems to have been decided on the ground that the realty involved therein was not partnership property within the meaning of the Act, but the Court, by way of dictum, stated that the 1917 statute did not change the Tennessee law pertaining to partial con-

version of realty into personalty, as announced in Williamson v. Fontain, 66 Tenn. 212.

However, in the same volume of Tenn. App. Reports, to wit, Vol. 1, at page 574 et seq. the Court of Appeals in Karns v. Loftis, said that the status of partnership relations and property had been radically changed in Tennessee by Chapter 140, Acts 1917, (Uniform Partnership Act).

And in Smith v. Guy, 24 Tenn. App. 352, 144 S. W. (2d) 702, 704, it was said:

"Where a partnership acquires land solely for speculation and it is not contemplated that there shall be any conveyances between the parties, equity regards it as personal property among the partners and an agreement of one partner to release his interest is not a contract for such an interest in lands as comes within the statute of frauds.

\* \* \* \* \* \*

"The foregoing appears to be in general accord with the policy of this State to regard a partner's interest in the partnership as personal property for all purposes connected with the partnership. See Uniform Partnership Law, Code, Section 7841 et seq. See Karns v. Loftis, 1 Tenn. App. 574."

But the leading case in Tennessee on this subject is Cultra v. Cultra, 188 Tenn. 506, 221 S. W. (2d) 533, where, as was stated by the Court in an opinion by Mr. Justice Burnett, there was presented the question as to whether or not the real estate owned by a partnership, purchased with partnership funds for partnership purposes, and not needed to pay partnership debts, descend-

ed to the heirs of a deceased partner or continued to be personalty and subject to the laws of distribution.

Among other things, the Court stated (188 Tenn. at page 509, 221 S. W. (2d) at page 534) that since the adoption of the Uniform Partnership Act, the Courts of Tennessee had not passed on the question above stated. The opinion continues:

"One case, Marks v. Marks, 1 Tenn. App. 436, apparently held that the passage of this Act did not affect the previous law, but in deciding that case, the court more or less went off on the proposition that the facts of the case did not show that it was the intent of the partnership to use the realty for partnership purposes or, in other words, they held that the interested parties failed to carry the burden of showing that that intent appeared. We, therefore, do not consider this case as an authority upon the question here presented. * * *

"Courts of other states, in construing the Uniform Partnership Act, adopt the rule of 'out and out' conversion, that is, that when the property is acquired by the partnership, from the partnership fund, for partnership purposes, it becomes personalty for all purposes. The most notable of these cases is Wharf v. Wharf, 306 Ill. 79, 137 N. E. 446, 449.

"These cases, and the holdings last above referred to, in effect adopt the English rule. This rule is that partnership realty must be regarded as personalty for all purposes, including descent and distribution. Real estate purchased and used for partnership purposes is an 'out and out' conversion to personalty so

that it will be distributed as such. See 25 A. L. R. at page 405."

The Court then refers to Tiffany on Real Property, 3rd Ed., Vol. 2, at section 445, where it is said,

"A conveyance to the partners for partnership purposes makes them, in England, joint tenants as regards the legal title, with the right of survivorship".

However, it is stated in the opinion of our Court that those Courts that have considered the Uniform Partnership Act in reference to realty, used and purchased for partnership purposes, have considered the same with reference to the section of the Act dealing with the vesting of title to real estate in the surviving partner and, in the absence of a surviving partner, in the personal representative of the deceased partner, and with a section that provides that a partner's interest is only a share in the profits and surpluses, the same being personal property.

The opinion refers to the case of Wharf v. Wharf, supra, where the Illinois Court was dealing with the Uniform Partnership Act which is identical with that of Tennessee. The Illinois Court said,

"It seems that the legislative intention was to adopt the English rule that real estate which becomes personal property for the purpose of a partnership remains personal property for the purpose of distribution." [306 Ill. 79, 137 N. E. 449.]

Our Court (in Cultra v. Cultra) then said:

"We consider the reasoning in the Wharf case, that is, that the rule is changed as to all partner-

ships, whether real estate or otherwise, by reason of the passage of the Uniform Partnership Act, is the most reasonable rule and is one that we should adopt and do adopt as the applicable rule in this State.

"In this construction and application of the Uniform Partnership Act we are meeting and reaching the intent of the Legislature in passing this Act. By so doing the conversion of real estate into personalty for certain purposes and then when those purposes have been met, reconverting the real estate back into realty is done away with by this Act. By this construction when a partnership once acquires real estate, with partnership funds and for partnership purposes, it then becomes personalty for all purposes and can be conveyed according to the terms of the Act as other partnership property. This seems a sound rule to apply and we are applying it here." [188 Tenn. 506, 221 S. W. (2d) 535.]

The result of the decision in Cultra v. Cultra, supra, is that the " 'Out and out' conversion" theory has superseded the partial conversion theory with respect to partnership realty in this State. Thus, Tennessee is in accord with several other jurisdictions which have construed the Uniform Partnership Act as it applies to this question.

## IV.

### Assignments of Error.

There is only one assignment of error which is as follows:

"The Court erred in finding and decreeing that the proceeds of the land involved in this controversy be

distributed as real estate, and not as personal property, under the applicable laws of descent and distribution.''

## V.

We start with the proposition that the deed involved here recites that the conveyance is to ''Brown Bros., a partnership,—to have and to hold said land unto the said Brown Bros. a partnership, their successors and assigns for ever.'' And, significantly, there is a covenant therein, ''That I will warrant and defend the title to said land unto said *Firm of Brown Bros.*, its successors and assigns against the lawful claims of all persons whomsoever.'' (Italics ours.)

The language of the deed is not ambiguous, hence, it is hard to see how the Court can avoid the force and effect of the parol evidence rule.

The rule announced in many of our early Tennessee cases has been consistently followed. One of these cases is Littlejohn v. Fowler, 45 Tenn. 284, where it was said that parol evidence cannot be admitted to contradict or vary the terms or to enlarge or diminish the obligation of a written instrument or deed, except on grounds of fraud, accident or mistake.

And in Mee v. Mee, 113 Tenn. 453, 82 S. W. 830, 106 Am. St. Rep. 865, it was held that where a deed conveys a fee simple title without more, parol evidence is admissible to show a holding in trust as this would not be a contradiction of the language of the deed.

Also, as was stated in Samuel v. King, 158 Tenn. 546, 14 S. W. (2d) 963, parol evidence may be introduced to show a failure of consideration.

But, as was said in First Nat. Bank of Ripley v. Barbee, 150 Tenn. 355, 265 S. W. 371, the above mentioned exceptions do not extend to a contradiction of the written instrument.

There is no suggestion in the record that this property was conveyed to Brown Bros. as trustees for any one else, nor is there any suggestion of fraud, accident, mistake or failure of consideration.

In Weatherly v. American Agricultural Chemical Co., 16 Tenn. App. 613, 65 S. W. (2d) 592, it was said that in construing a written contract, parol evidence of surrounding circumstances is not admissible to contradict the writing. And in McQuiddy Printing Co. v. Hirsig, 23 Tenn. App. 434, 134 S. W. (2d) 197, it was said that the law conclusively presumes that parties to a contract understand the obligations thereof and evidence is not admissible to show their understanding to have been otherwise.

We may look to surrounding circumstances to enable us to understand the intention which the parties have expressed in a deed but not for the purpose of carrying out an intention not expressed. See Murdock v. City of Memphis, 47 Tenn. 483; 87 U. S. 590, 22 L. Ed. 429.

As stated in Smith v. Medley, 7 Tenn. C. C. A. (Higgins) 111, the presumption must be indulged that terms used in the habendum clause of a deed were used advisedly and for a purpose and they must not be lightly cast aside.

The legal effect of a deed is a matter for determination by the Court and, as was held in Piles v. Bouldin,

Tenn., 24 U. S. 325, 6 L. Ed. 486, where there is no such ambiguity as would require parol explanations, the jury have nothing to do with the construction of the deed. Also see McQuiddy Printing Co. v. Hirsig, supra, where it is also said that recitals in a deed are conclusive evidence of the facts recited, where the purpose of the deed is involved.

The deed of conveyance here does not merely raise a presumption of ownership by the partnership, but affirmatively shows title in the partnership. That fact has not been brought into question, and nothing has been shown to indicate that the title to the property could properly be regarded as being elsewhere.

While it is true that in Cultra v. Cultra, supra, the Court used the language, ''When a partnership once acquires real estate, with partnership funds and for partnership purposes, it then becomes personalty for all purposes.'' [188 Tenn. 506, 221 S. W. (2d) 535.] And, while the proof in this record is meagre and unsatisfactory in some respects regarding the question of purchase with partnership funds and for partnership purposes, nevertheless, there is proof in the record that partnership funds went into the purchase of the property. Horace Whitehead, the vendor, stated that a part of the $1,000 consideration paid him for the property consisted of notes payable to Brown Bros., which notes he understood had been given for groceries purchased from the partnership store. As to whether the property was used for partnership purposes or not the record is substantially silent. But, can it be said that the property of a partnership, purchased with partnership funds, must be actively used in the partnership business in order to remain an asset of the partnership? We think not. A

partnership might see fit to deposit money in a savings account and let it lie there for years and never use it, but this would not deprive the partnership business of the fund on a dissolution. It seems clear that a partnership, even though it be primarily a mercantile concern, could purchase real estate for investment purposes, in the partnership name, and hold said property as an asset of the partnership for the purpose of reaping the benefits of increased value or for any other reason that might appeal to the partners.

As far as we know, and as far as this record sheds any light on the question, produce from the farm in question may have been sold through the store as an outlet.

In other words, it seems to us that, where the property stands in the name of the partnership, and without any further showing, it cannot be presumed that it was not, in fact, partnership property, and the burden of showing that it was owned in a different manner from that shown by the record title, is on those who assert such a proposition.

In re, Moore's Estate, 34 Tenn. App. 131, 234 S. W. (2d) 847, 848, the Court held:

Syl. 9. "Under Uniform Partnership Act, when partnership once acquires realty with partnership funds and for partnership purposes, realty then becomes personalty for all purposes."

Syl. 10. "In proceeding for allotment of dower, where it did not appear satisfactorily as to how gin, in which decedent had interest, was acquired by partnership which operated it, additional evidence should be taken to determine whether gin had been

acquired with partnership funds and widow thus deprived of dower therein.''

This seems to be tantamount to a holding that if the real estate (the gin) was acquired with partnership funds, without more, it would be regarded as real estate in the settlement, thus depriving the widow of dower therein.

As is said in 40 Am. Jur. Sec. 97, persons dealing with a partnership, such as purchasers and creditors, have the right, under the law and decisions, to rely on the title to real estate as shown by the record, and, while some of the courts adopt the rule that the intention of the partners at the time the property was acquired, as shown by facts and circumstances surrounding the transaction of purchase, are to be considered in determining the status of the property, it is generally held that there is a presumption that the ownership of real estate is where the muniment of title places it. Then we must not forget that the Uniform Partnership Act itself provides, ''Unless the contrary intention appears, the property acquired with partnership funds is partnership property.''

As pointed out hereinabove, there is evidence that partnership funds went into the purchase of this property when it was conveyed to the partnership, and there is no evidence to the contrary.

Again, it is pointed out in 40 Am. Jur. Sec. 101, that there are relatively few authorities that go to the extent of requiring actual use of property purchased with partnership funds in order to establish that such property was intended to be a partnership asset.

Most of the cases where this question is involved deal with property that did not stand in the name of the partnership but was in the name of an individual partner or partners, or in some other name, and the question arose as to whether it was, in fact, partnership property. Of course this is not the situation that faces us here.

█ There is no attack on the deed of conveyance here. It was very well written, was duly acknowledged before a Notary Public, and there is nothing to indicate that the parties did not know what they were doing when they placed title in the partnership, hence, we hold that the land in question belonged to the partnership and should be treated as an asset thereof.

It results that the decree of the Chancellor is reversed and the cause is remanded to be further proceeded with as the circumstances require in accordance with this opinion.

Reversed and remanded.

Felts and Hickerson, JJ., concur.