IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 2, 1999 Session

## JAMES D. LECKRONE v. JAMES D. WALKER, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 96-3056-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M1998-00974-COA-R3-CV - Filed April 30, 2002**

---

This appeal arises from a dispute over the proceeds from the sale of a Florida condominium unit once owned by a Tennessee partnership but titled in the name of two of its partners. When the successor to the partnership's interest in the unit undertook to sell it, one of the owners of record agreed to sign the deed only if the proceeds were placed in escrow while the parties attempted to resolve his claim to one-half of the funds. When the parties failed to agree on a distribution of the proceeds, the escrow holder filed an interpleader action in the Chancery Court for Davidson County. Following a bench trial, the trial court awarded the escrowed proceeds to the partnership's successor after determining that the owner of record was estopped to invoke the statute of frauds to defeat the successor's claim. We have determined that the trial court reached the correct result because the owner of record no longer possessed a beneficial interest in the unit. Accordingly, we affirm the judgment.[1]

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

John R. Jacobson, Nashville, Tennessee, for the appellant, James D. Walker.

W. Lee Corbett and David F. Lewis, Nashville, Tennessee, for the appellee, Prism Partners, L.P.

**OPINION**

**I.**

James D. Walker is a self-employed employee benefits consultant. Sometime in the late 1970s, he struck up a friendship with Larry Cherry who held himself out as a certified financial planner. Messrs. Walker and Cherry became fast friends, and by the early 1980s, Mr. Walker had

---

[1]The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Allen v. National Bank of Newport*, 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992); *Clark v. Metropolitan Gov't*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991).

become one of Mr. Cherry's clients. According to Mr. Walker, he gave Mr. Cherry virtually free reign to manage his assets with essentially no supervision or accountability.

In 1984, Mr. Cherry invited Mr. Walker to accompany him to Panama City, Florida to inspect a condominium unit at the Dunes of Panama that one of Mr. Cherry's clients was considering as an investment. After listening to the sales pitch, Messrs. Cherry and Walker decided to purchase a unit for themselves. Later in 1984, they made a ten percent down payment on a $137,000 unit that was under construction. In April 1985, Messrs. Cherry and Walker closed on their unit and had the title placed in their names as joint tenants. Several days after the closing they purchased furnishings for the condominium. The funds used for the down payment, the purchase, and the furnishings came from Money Management III, a "loose investment pool" containing funds entrusted to Mr. Cherry by other clients, and from one of Mr. Cherry's other clients.[2] There is little disagreement that the condominium was, in Mr. Cherry's words, "highly leveraged."

In 1986, when the rental income from the condominium did not meet expectations, Mr. Cherry suggested to Mr. Walker that they should "put the condominium into" an existing partnership called Money Management Investment I. Mr. Cherry's purpose was to spread the risk of the condominium investment and to provide a tax shelter for two of the other partners in Money Management Investment I. Mr. Walker agreed with Mr. Cherry's proposal, but neither Mr. Cherry nor Mr. Walker executed a deed conveying the condominium unit to Money Management Investment I. In return for transferring his interest in the unit to Money Management Investment I, Mr. Walker received: (1) a twenty percent interest in the Money Management Investment I partnership, (2) a check for the costs he had incurred in connection with the condominium, and (3) Money Management Investment I's assumption of the remaining condominium-related debts.[3]

Mr. Walker never again treated the condominium as if it belonged to him personally. Money Management Investment I took over managing the property, paid the operating expenses, and collected the rental income. While Mr. Walker included his interest in the Money Management Investment I partnership as an asset on his financial statements, he did not include the condominium unit itself as an asset. At the same time, he received periodic statements from Money Management Investment I and copies of the partnership's tax returns in which the condominium unit was identified as a partnership asset. Mr. Walker never questioned these documents, and, when he or his family used the condominium, he paid rent to Mr. Cherry who was managing Money Management Investment I's affairs.

---

[2] Mr. Cherry arranged the financing and saw to it that neither he nor Mr. Walker signed a note or deed of trust.

[3] Money Management Investment I executed two promissory notes as part of this transaction. The first note for $123,891.70 to Money Management Mortgage Account was for the unpaid purchase price of the condominium. The second note for $23,900 to Don Crace was for the balance of the funds used to purchase the condominium's furniture.

Mr. Cherry's financial house of cards began to crumble in 1993 when one of his clients obtained a $75,000 judgment against him.[4]  In an effort to shield his assets, Mr. Cherry decided to shift the ownership of the condominium unit.  Accordingly, in March 1993 Money Management III purchased the unit from Money Management Investment I for $110,000 in cash.  Just as in 1986, there is no written contract or deed of conveyance to memorialize this transaction.  Money Management III, apparently with Mr. Cherry's assistance, continued to manage the Dunes condominium property.  In October 1995, Money Management III was "formalized" into Prism Partners, L.P., a limited partnership made up of fifteen of the individual investors who had contributed funds to Money Management III.[5]

Shortly after its creation, Prism Partners entered into a contract to sell the Dunes condominium to a third party for $133,000.  When it was discovered that the title to the property was still the Messrs. Cherry's and Walker's names, Prism Partners asked them to execute the necessary deeds to accomplish the sale.  Mr. Walker declined because Prism Partners would not agree to share the proceeds of the sale with him.  However, because the buyer insisted that the sale be completed before the end of 1995, Mr. Walker agreed to sign the deed and to permit the sale to be completed in return for Prism Partners's agreement to place the proceeds of the sale in escrow pending the resolution of their disagreement.

On December 29, 1995, Prism Partners placed approximately $121,660 with James D. Leckrone.  Later, approximately $1,395 in reimbursed Florida property tax payments was added to the original amount.  When it became evident that Prism Partners and Mr. Walker would not agree on the disposition of the funds, Mr. Leckrone filed an interpleader action in the Chancery Court for Davidson County, tendering $125,001.77 to the court for disposition.  Mr. Walker insisted that he was entitled to one-half of the funds because he owned an undivided one-half interest in the property when it was sold in 1995.  He also asserted that the statute of frauds [Tenn. Code Ann. § 29-2-101(a)(4) (2000)] prevented Prism Partners from introducing evidence to contradict his record ownership of the property.  Following a bench trial, the trial court determined that Mr. Walker was estopped from raising the statute of frauds and awarded the interpleaded funds to Prism Partners.  Mr. Walker has perfected this appeal.

## II.

Mr. Walker's sole argument here is that the trial court erred by invoking the principle of estoppel to prevent him from using the statute of frauds to rebuff Prism Partners's claim to the escrowed proceeds from the sale of the condominium unit.  This argument, even if well-taken, will not carry the day for Mr. Walker because the statute of frauds cannot be used to defeat a

---

[4]This court later determined that the amount of punitive damages awarded by the trial court was inadequate and increased the judgment against Mr. Cherry to $150,000.  *Pridemore v. Cherry*, 903 S.W.2d 705, 709 (Tenn. Ct. App. 1995).  Mr. Cherry later filed an unsuccessful malpractice action against the lawyers who represented him in that proceeding.  *Cherry v. Williams*, 36 S.W.3d 78 (Tenn. Ct. App. 2000).

[5]The general partner of Prism Partners, L.P. is Prism Management, Inc., a corporation owned by Messrs. Cherry's and Walker's certified public accountant.

partnership's claim that one or more of its partners are holding legal title to property for the partnership's benefit. This case stands or falls on the strength of the evidence regarding the beneficial ownership of the condominium unit after 1986.

**A.**

Partnership property includes all the property originally brought into the partnership as well as any property subsequently acquired for the partnership. Tenn. Code Ann. § 61-1-107(a) (1989). Real property owned by a partnership may be held either in the partnership's name, Tenn. Code Ann. § 61-1-107(c);[6] *Brown v. Brown*, 45 Tenn. App. 78, 97, 320 S.W.2d 721, 729 (1958), or in the name of one or more of the partners. *In re Magnani*, 223 B.R. 177, 182 (Bankr. N.D. Iowa 1997); *Mathews v. Wosek*, 205 N.W.2d 813, 817 (Mich. Ct. App. 1973); *Grissum v. Reesman*, 505 S.W.2d 81, 87 (Mo. 1974); *State v. King*, 460 N.E.2d 1143, 1145-46 (Ohio Ct. App. 1983). Accordingly, the record title of a piece of property does not necessarily reveal whether the property belongs to the owners of record or to a partnership of which the owners of record are members. *Hunt & Co. v. Benson*, 21 Tenn. (2 Hum.) 459, 460-61 (1841); *see also Wilen v. Wilen*, 486 A.2d 775, 783 (Md. Ct. Spec. App. 1985); *Foust v. Old Am. County Mut. Fire Ins. Co.*, 977 S.W.2d 783, 786 (Tex. App. 1998).[7] At most, it gives rise to a rebuttable presumption that the property is owned by the owners of record. *In re Perry's Estate*, 192 P.2d 532, 536 (Mont. 1948).[8]

At least among the partners themselves, determining whether property belongs to the partnership or to one or more of the partners in their individual capacities depends on the partners' intentions and understandings.[9] *Boyers v. Elliott*, 26 Tenn. (7 Hum.) 204, 207 (1846) (deciding the status of property using documents and evidence to determine the intent of the parties); *Young v. Cooper*, 30 Tenn. App. 55, 67, 203 S.W.2d 376, 382 (1947); *Jenkins v. Harris*, 19 Tenn. App. 113,

---

[6]Tennessee's version of the Uniform Partnership Act of 1914, Tenn. Code Ann. §§ 61-1-101, -142 (1989), was repealed effective January 1, 2002 by the Tennessee General Assembly's enactment of the Uniform Partnership Act of 1997. Act of May 29, 2001, ch. 353, 2001 Tenn. Pub. Acts 775 (codified at Tenn. Code Ann. §§ 61-1-101, -1208 (Supp. 2001)). Tenn. Code Ann. § 61-1-204(a)(1) (Supp. 2001) states that property is partnership property if it is acquired in the partnership's name.

[7]The Tennessee Supreme Court has characterized the partnership's interest as a "secret trust in favor of the partnership." *Killebrew v. Ray*, 181 Tenn. 333, 339, 181 S.W.2d 334, 337 (1944).

[8]Tenn. Code Ann. § 61-1-204(d) (Supp. 2001) states that "[p]roperty acquired in the name of one (1) or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes." The effect of this provision is to create a rebuttable presumption that only the use of the property, not the property itself, was contributed to the partnership. Uniform Partnership Act (1997) § 204 cmt. 3, 6 [Part I] U.L.A. 98 (2001) ("Uniform Partnership Act (1997)").

[9]The courts must consider other matters when the rights of third parties will be affected by a decision regarding the ownership of property. *See* Tenn. Code Ann. § 61-1-302(b) (Supp. 2001).

121, 83 S.W.2d 562, 566-67 (1935).[10]  Using partnership funds to purchase the property is not the only basis upon which these decisions are made.  *In re Fair Oaks, Ltd.*, 168 B.R. 397, 402 (B.A.P. 9th Cir.  1994); *King v. Evans*, 791 S.W.2d 531, 533 (Tex. App. 1990).  The courts regularly derive the partners' intentions and understandings by considering: (1) the parties' statements, conduct, and writings when the property was acquired, (2) the parties' course of conduct after the acquisition of the property, (3) the use of the property in the partnership business, (4) the terms of the partnership agreement, (5) the listing of the property as an asset on the partnership books and tax returns, (6) the attribution of profits or losses from the property to the partnership, and (7) the use of partnership funds to maintain the property.  *Davis v. Loring*, No. 01A01-9004-CV-00149, 1991 WL 32311, at *2 (Tenn. Ct. App. Mar. 13, 1991) (No Tenn. R. App. P. 11 application filed) (quoting *In re Fulton*, 43 B.R. 273, 275 (Bankr. M.D. Tenn. 1984)) (deriving the parties' intention from the facts and circumstances surrounding the purchase and the parties' conduct after the purchase); *see also In re Sealy Bros.*, 158 B.R. 801, 804 (Bankr. W.D. Mo. 1993); *Standring v. Standring*, 794 P.2d 1089, 1091 (Colo. Ct. App. 1990); *Crowe v. Smith*, 603 So. 2d 301, 305 (Miss. 1992); *Thomas v. Lloyd*, 17 S.W.3d 177, 183 (Mo. Ct. App. 2000); *Lutz v. Schmillen*, 899 P.2d 861, 864 (Wyo. 1995).

Individual partners have a fiduciary relationship with the other partners and with the partnership itself.  *Cude v. Couch*, 588 S.W.2d 554, 555 (Tenn. 1979); *Killebrew v. Ray*, 181 Tenn. at 337, 181 S.W.2d at 336.  Thus, when property is acquired for partnership purposes but is held in the name of one or more of the partners, equity recognizes the existence of a resulting trust[11] for the benefit of the partnership.  *Boyers v. Elliott*, 26 Tenn. (7 Hum.) at 208 (holding that the property becomes, in equity, the property of the partnership even though one partner retains legal title); *see also In re Urban Dev. Co. & Assocs.*, 452 F. Supp. 902, 905 (D. Md. 1978); *Omohundro v. Matthews*, 341 S.W.2d 401, 405 (Tex. 1960).

Resulting trusts may be established using parol evidence.  *Hunt v. Hunt*, 169 Tenn. 1, 9, 80 S.W.2d 666, 669 (1935); *Hoffner v. Hoffner*, 32 Tenn. App. 98, 103, 221 S.W.2d 907, 909 (1949).  Thus, neither the lack of a written conveyance nor the statute of frauds will defeat a partnership's claim that one or more of its partners is holding legal title to property for the partnership's benefit.  *King v. Evans*, 791 S.W.2d at 532 (lack of a written conveyance); *Davis v. Sheerin*, 754 S.W.2d 375, 386 (Tex. App. 1988) (statute of frauds).

---

[10]*See also Norris v. Norris*, No. 03A01-9403-CH-00101, 1994 WL 529405, at *7 (Tenn. Ct. App. Sept. 15, 1994) (No Tenn. R. App. P. 11 application filed); *First Nat'l Bank v. Tennessee Consol. Coal Co.*, No. 01A01-9208-CV-00326, 1993 WL 241289, at *3 (Tenn. Ct. App. July 2, 1993) (No Tenn. R. App. P. 11 application filed); Uniform Partnership Act (1997) § 204, cmt. 3.

[11]A resulting trust is a judge-made vehicle that enables the courts to reach an interest in property belonging to one person but titled in another.  *Wells v. Wells*, 556 S.W.2d 769, 771 (Tenn. Ct. App. 1977).  Its principal purpose is to prevent unjust enrichment.  *Green v. Hooton*, 624 S.W.2d 898, 902 (Tenn. Ct. App. 1981).  The courts will impose a resulting trust when a person acquires a legal estate in property under circumstances indicating that the beneficial interest in the property does not accompany the title.  William H. Inman, *Gibson's Suits In Chancery* § 382 (7th ed. 1988).  In other words, a resulting trust arises when "one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another."  *In re Estate of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993).

**B.**

We now apply these principles to the evidence of the acquisition, ownership, and use of the Dunes condominium unit. In examining evidence, we must be mindful that determining whether property being held in the name of one or more of the partners is partnership property is a question of fact. *In re Wingo*, 89 B.R. 54, 57 (B.A.P. 9th Cir. 1988); *Mathews v. Wosek*, 205 N.W.2d at 817. However, because the partnership's claim hinges on the imposition of a resulting trust, the partnership must prove its claim by more than a preponderance of the evidence. *Browder v. Hite*, 602 S.W.2d 489, 493 (Tenn. Ct. App. 1980). To warrant the imposition of a resulting trust, the party seeking to impose the trust on a legal interest in property must establish the grounds for the trust by clear and convincing evidence. *In re Estate of Nichols*, 856 S.W.2d at 401; *In re Estate of Wardell*, 674 S.W.2d 293, 295 (Tenn. Ct. App. 1983).

Because the heightened burden of proof required to impose a resulting trust differs from the customary burden of proof in civil cases, we must adapt the customary standard in Tenn. R. App. P. 13(d) for reviewing findings of fact. In cases requiring proof by clear and convincing evidence, we will first review the trial court's findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's findings of fact will be presumed to be correct unless the evidence preponderates otherwise. Then, we will determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the grounds for imposing a resulting trust on an interest in property. *See Ray v. Ray*, No. M2000-00895-COA-R3-CV, 2001 WL 1173266, at *6 (Tenn. Ct. App. Oct. 5, 2001) (Tenn. R. App. P. 11 application pending); *In re L.S.W.*, ___ S.W.3d ___, ___, 2001 WL 1013079, at *5 (Tenn. Ct. App. 2001) (both applying the hybrid, two-step standard of review to an issue requiring proof by clear and convincing evidence).

There can be no dispute that Messrs. Cherry and Walker purchased the Dunes condominium unit in 1995 with the intention to hold it as tenants in common for the use of their families and for their own financial gain. However, the evidence shows clearly and convincingly that in early 1986, Messrs. Cherry and Walker transferred beneficial ownership of the unit to the Money Management Investment I partnership. In return, they received (1) a twenty percent interest in the partnership, (2) relief from possible future liability for the money borrowed to purchase and furnish the unit, and (3) a cash payment to reimburse them for their condominium-related expenses between 1985 and 1986. From and after 1986, Mr. Walker, Mr. Cherry, and the Money Management Investment I partnership treated the unit as if it belonged to Money Management Investment I. Mr. Walker paid rent when he or members of his family used the unit. Mr. Walker did not list the property as an asset on any of his financial documents or tax returns. Mr. Walker did not object when Money Management Investment I listed the property as an asset on its books and tax returns. Finally, in 1993, Mr. Walker did not insist on receiving a portion of the proceeds when Money Management Investment I sold the condominium to Money Management III.

In the same vein, holding and managing the condominium unit was entirely consistent not only with the purposes of the Money Management Investment I partnership reflected in the

partnership agreement,[12] but also with the evidence that transferring the unprofitable unit to the partnership enabled Messrs. Cherry and Walker to spread the risk of loss to others and also enabled their partners to take advantage of the business losses for tax purposes. In contrast to Mr. Walker's actions after 1986, all the actions of the Money Management Investment I partnership were consistent with its claim of ownership. The partnership listed the property as an asset on its books and tax returns. The partnership managed and controlled the property and paid the expenses associated with the property. Finally, the partnership sold the property to Money Management III in 1993. The only conclusion that can be drawn from these facts is that as of 1986, the Money Management Investment I partnership owned the beneficial interest in the Dunes condominium unit even if legal title remained with Messrs. Cherry and Walker. Accordingly, Messrs. Cherry and Walker, as fiduciaries of the partnership, were holding the property solely for the benefit of Money Management Investment I and its successors.

## C.

In light of the clear and convincing evidence regarding the ownership of the condominium unit after 1986, it is unnecessary to determine whether Mr. Walker was estopped to assert the statute of frauds as a defense to Prism Partners's claim to the escrowed proceeds. The statute of frauds could not have prevented the introduction of parol evidence to establish the grounds for imposing a resulting trust on the condominium unit for the benefit of Money Management Investment I and its successors in interest. Therefore, it is entirely unnecessary to determine whether Mr. Walker should have been estopped to assert the statute of frauds as a defense.

Prism Partners, as Money Management Investment I's successor in interest, was not required to present a written conveyance to establish its interest in the condominium unit. It presented sufficient evidence to prove clearly and convincingly that it owned the beneficial interest in the unit in 1995 when it undertook to sell it to a third party. Accordingly, the trial court could have circumvented the doctrine of estoppel by concluding that Mr. Walker no longer owned a beneficial interest in the property and by directing Mr. Walker to honor his fiduciary obligation by executing the deed conveying the property to Prism Partners's purchaser.

## III.

Even though we do not concur with the trial court's reasoning, we concur with its decision to award Prism Partners all the escrowed proceeds from the sale of the condominium unit. Accordingly, we affirm the judgment and remand the case for whatever further proceedings may be required. We tax the costs of this appeal to James D. Walker and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[12] As reflected in Article II of the partnership agreement, the purpose of the partnership was "[t]o engage in the general business of owning or investing in real or personal . . . property of every description, and to manage, administer. develop or improve the same."