# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 19, 2015 Session

## ALEXIS BREANNA GLADDEN v. CUMBERLAND TRUST AND INVESTMENT COMPANY, ET AL.

**Appeal from the Circuit Court for Hamblen County**
**No. 12-CV-119     Thomas J. Wright, Judge**

---

### No. E2015-00941-COA-R9-CV-FILED-MARCH 24, 2016

---

We granted an interlocutory appeal pursuant to Tenn. R. App. P. 9 in this case to consider whether the signature of the trustee of the Alexis Breanna Gladden Irrevocable Trust ("the Trust") on an investment/brokerage account agreement agreeing to arbitration binds the minor beneficiary of the Trust to conduct arbitration of unknown future disputes or claims.  We find and hold that while the plain language of the trust agreement does allow the trustee to agree to arbitrate claims and disputes that have arisen, it does not allow the trustee to agree to arbitration of unknown future disputes or claims.  Therefore, the signature of the trustee of the Trust on an investment/brokerage account agreement agreeing to arbitration does not bind the minor beneficiary to conduct arbitration of unknown future disputes or claims.

### Tenn. R. App. P. 9 Interlocutory Appeal by Permission; Judgment of the Circuit Court Reversed; Case Remanded

D. MICHAEL SWINEY, CHIEF JUDGE, delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

F. Braxton Terry, Morristown, Tennessee and W. Lewis Jenkins, Jr., Dyersburg, Tennessee, for the appellant, Alexis Breanna Gladden b/n/f Wade Harvey, Jr.

Mark D. Griffin and Will E. Routt, Memphis, Tennessee, for the appellees, Wunderlich Securities, Inc. and Albert M. Alexander, Jr.

## OPINION

## Background

Alexis Breanna Gladden ("the Minor") is a minor who was catastrophically injured at a young age and suffered severe disabilities. The Trust was created for the benefit of the Minor in Hamblen County, Tennessee, and was approved by and subject to the order of the Circuit Court for Hamblen County ("the Trial Court"). As pertinent to this appeal, the trust agreement establishing the Trust by order of the Trial Court ("Trust Agreement") provides:

**Section 11.01  Introduction to Trustee's Powers**

The Trustee may exercise, without prior approval from any court, all powers conferred by this trust agreement and any other powers conferred by law, including, without limitation, those powers set forth under the common law or any fiduciary powers act or other laws of the State of Tennessee, except as otherwise specifically provided in this agreement. Each power conferred upon the Trustee by state or federal statutes shall be subject to any express limitations or contrary directions contained in this agreement.

* * *

**Section 11.05  The Trustee's Administrative Powers**

In addition to the other powers granted the Trustee in other provisions of this agreement, the Trustee shall have the following administrative powers:

* * *

**(e)  Settlement Powers**

The Trustee may settle, by compromise, arbitration or otherwise any and all claims and demands in favor of or against, or in any way relating to, any trust created under this agreement upon such terms as the Trustee may determine. The Trustee may release or abandon any claims in favor of this trust.

2

Wade Harvey, Sr. ("Plaintiff") was appointed as the guardian of the Minor in June of 2011. In May of 2012, Plaintiff filed suit on behalf of the Minor against several defendants[1] alleging, among other things, failure to properly manage the Trust funds, breach of fiduciary duty, and misappropriation of the Trust funds.

Defendants Wunderlich Securities, Inc. ("Wunderlich") and Albert M. Alexander, Jr. ("Alexander") filed a motion to compel arbitration and stay the proceedings alleging, in part, that in connection with opening an account at Wunderlich in the name of the Trust, the trustee, the Minor, and Wunderlich had entered into a binding compulsory agreement to arbitrate all controversies.[2]

After a hearing on the motion to compel arbitration, the Trial Court entered its order on February 12, 2013 granting the motion to compel arbitration and stay the proceedings. Plaintiff then filed a motion seeking an interlocutory appeal pursuant to Tenn. R. App. P. 9 from the February 12, 2013 order compelling arbitration. The Minor died in July of 2013 and an Agreed Order was entered on September 18, 2013 substituting Plaintiff for the Minor in this suit.

After a hearing on the motion for interlocutory appeal, the Trial Court entered its order on May 12, 2015 finding that an interlocutory appeal was justified because if Plaintiff were correct any arbitration decision could be invalid as the arbitrator would not have authority to hear the matter. An interlocutory appeal, therefore, would assist in potentially reducing needless litigation. The Trial Court granted Plaintiff leave to seek permission for an interlocutory appeal with this Court. This Court granted permission for an interlocutory appeal by order entered June 23, 2015 on the sole issue of whether the trustee's signature on an investment/brokerage account agreement agreeing to arbitration binds the Minor beneficiary to conduct arbitration of unknown future disputes or claims.

## Discussion

Wunderlich and Alexander raise an issue regarding whether this Court has subject matter jurisdiction to hear this interlocutory appeal. Jurisdiction is a threshold issue as our Supreme Court explained in *Johnson v. Hopkins*, stating:

---

[1] Plaintiff sued Cumberland Trust and Investment Company, Joi S. Chatman, Albert M. Alexander, Jr., Wells Fargo & Company, Wells Fargo Advisors, LLC as successor in interest to A.G. Edwards, Inc., d/b/a A.G. Edwards & Sons, Inc., A.G. Edwards, Inc., A.G. Edwards & Sons, Inc., and Wunderlich Securities, Inc.

[2] Defendants Wells Fargo & Company, Wells Fargo Advisors, LLC as successors in interest to A.G. Edwards, Inc. d/b/a A.G. Edwards & Sons, Inc., A.G. Edwards, Inc. and A.G. Edwards & Sons, Inc. (collectively "Wells Fargo") joined in the motion to compel arbitration. Plaintiff later took a voluntary non-suit without prejudice as to Wells Fargo.

Subject matter jurisdiction involves the court's lawful authority to adjudicate a controversy brought before it. *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012); *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996). Subject matter jurisdiction is conferred by statute or the Tennessee Constitution; the parties cannot confer it by appearance, plea, consent, silence, or waiver. *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012). Any order entered by a court lacking jurisdiction over the subject matter is void. *Id.* Therefore, subject matter jurisdiction is a threshold inquiry, which may be raised at any time in any court. *Id.*

*Johnson v. Hopkins*, 432 S.W.3d 840, 843-44 (Tenn. 2013). Given all this, we will address this issue.

Wunderlich and Alexander argue in their brief on appeal that subject matter jurisdiction in this case is governed by Tenn. Code Ann. § 29-5-319, and because an order to compel arbitration does not fall within one of the enumerated categories in this statute, subject matter jurisdiction is lacking. Although Plaintiff did not have the right to an appeal pursuant to Tenn. Code Ann. § 29-5-319 in this case at this juncture, this fact did not preclude Plaintiff from filing an application seeking an interlocutory appeal by permission pursuant to Tenn. R. App. P. 9, which is exactly what Plaintiff did.

In pertinent part, Rule 9 provides:

Except as provided in Rule 10, an appeal by permission may be taken from an interlocutory order of a trial court from which an appeal lies to the Supreme Court, Court of Appeals or Court of Criminal Appeals only upon application and in the discretion of the trial and appellate court.

Tenn. R. App. P. 9. Plaintiff filed a motion with the Trial Court seeking leave for an interlocutory appeal pursuant to Tenn. R. App. P. 9. The Trial Court considered Plaintiff's motion, exercised its discretion, and granted permission to file for an interlocutory appeal to this Court. This Court then considered Plaintiff's motion and in the exercise of our discretion granted the motion for interlocutory appeal. Wunderlich and Alexander are simply incorrect in their assertion that this Court lacks subject matter jurisdiction to hear this interlocutory appeal by permission pursuant to Tenn. R. App. P. 9.

Wunderlich and Alexander attempt to raise other issues in this appeal including whether Plaintiff lacks standing and whether Plaintiff's claims fall within the scope of the

arbitration agreement. These issues were not certified in our order granting this interlocutory appeal. In addition, the issue of standing was not presented to the Trial Court. As the Trial Court did not have an opportunity to consider this issue, and as the record on appeal has not been developed with regard to this issue, we are unable to consider the issue of standing at this time. For all of these reasons we will not address the other issues that Wunderlich and Alexander attempt to raise.

In *Trigg v. Little Six Corp.*, a case involving a Rule 9 interlocutory appeal of a trial court's decision on a motion to compel arbitration, we explained the standard of review to be applied stating:

> Our review of a trial court's grant or denial of a motion to compel arbitration is governed by the same standards that apply to a bench trial. *Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 496 (Tenn. Ct. App. 2008). As we observed in *Rosenberg v. BlueCross BlueShield of Tenn., Inc.*, 219 S.W.3d 892, 903–04 (Tenn. Ct. App. 2006),
>
> > [a]s a general rule, a court's enforcement of an arbitration provision is reviewed *de novo*. *See Cooper v. MRM Inv. Co.*, 367 F.3d 493, 497 (6th Cir. 2004). A trial court's order on a motion to compel arbitration addresses itself primarily to the application of contract law. We review such an order with no presumption of correctness on appeal. *See Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 356 (Tenn. Ct. App. 2001); *see also Nelson v. Wal–Mart Stores, Inc.*, 8 S.W.3d 625, 629 (Tenn. 1999). However, to the extent that findings of fact are necessary concerning the "cost-prohibitive" nature of the arbitration sought, these findings come to us with a presumption of correctness absent a preponderance of evidence to the contrary. Tenn. R. App. P. 13(d); *T.R. Mills Contractors v. WRH Enterprises, LLC et al.*, 93 S.W.3d 861, 864 (Tenn. Ct. App. 2002).

*Trigg v. Little Six Corp.* 457 S.W.3d 906, 911 (Tenn. Ct. App. 2014).

We granted this Tenn. R. App. P. 9 interlocutory appeal on the sole issue of whether the signature of the trustee on an investment/brokerage account agreement agreeing to arbitration binds the Minor beneficiary of the Trust to conduct arbitration of unknown future disputes and claims. As this Court has explained:

> Trust instruments are interpreted similarly to contracts, deeds, or

5

wills. *Marks v. Southern Trust Co.*, 203 Tenn. 200, 205, 310 S.W.2d 435, 437-38 (1958). Determining the settlor's intent is important and may be easily done by looking to the four corners of the trust instrument. *Marks v. Southern Trust Co.*, 203 Tenn. at 205, 310 S.W.2d at 438. Unless the trust instrument is ambiguous or allegations of fraud, accident or mistake have been made, parol evidence or evidence of surrounding facts and circumstances that contradicts or varies the terms of a written instrument may not be considered. *HMF Trust v. Bankers Trust Co.*, 827 S.W.2d 296, 299 (Tenn. Ct. App. 1991); *Brown v. Brown*, 45 Tenn. App. 78, 95, 320 S.W.2d 721, 728 (1959).

*In re: Estate of Marks*, 187 S.W.3d 21, 28 (Tenn. Ct. App. 2005). With regard to interpretation of contracts, this Court has explained:

In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889–90 (Tenn. 2002)(*citing Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 Am.Jur.2d, *Contracts*, § 245).

This Court's initial task in construing the Contract at issue is to determine whether the language of the contract is ambiguous. *Planters Gin Co.*, 78 S.W.3d at 890. If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. *Id.* A contract is ambiguous only when its meaning is uncertain and may *fairly* be understood in more than one way. *Id.* (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to

determine the intent of the parties. *Id.* Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. *Id.*

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698–99 (Tenn. Ct. App. 2005).

When interpreting the Trust Agreement, we must take care not to render any of the language superfluous by our interpretation. As this Court explained in *Associated Press v. WGNS Inc.*:

It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another.

As is said in 6 R.C.L. page 838 under the title "Contracts",

"Taking its words in their ordinary and usual meaning, no substantive clause must be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course. Seeming contradictions must be harmonized if that course is reasonably possible. Each of its provisions must be considered in connection with the others, and, if possible, effect must be given to all. A construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all of its provisions. The courts will look to the entire instrument, and, if possible, give such construction that each clause shall have some effect, and perform some office."

*Associated Press v. WGNS Inc.*, 348 S.W.2d 507, 512 (Tenn. Ct. App. 1961) (citation omitted).

The Trust Agreement provides in plain unambiguous language that the trustee has the right to "settle, by compromise, arbitration or otherwise any and all claims and demands . . .," and "may release or abandon any claims in favor of this trust." Thus, without question the trustee has the right under the Trust Agreement to agree to arbitration binding the Minor beneficiary as to claims or demands once they have arisen. This provision in the Trust Agreement is consistent with the Tennessee Uniform Trust Code, Tenn. Code Ann. § 35-15-101, *et seq.* Specifically, Tenn. Code Ann. § 35-15-816 provides:

**35-15-816.  Specific powers of trustee.**

\* \* \*

(b) Unless the terms of the instrument expressly provide otherwise and without limiting the authority conferred by § 35-15-815, a trustee may:

\* \* \*

(14) Pay or contest any claim, settle a claim by or against the trust, and release, in whole or in part, a claim belonging to the trust;

Tenn. Code Ann. § 35-15-816(b)(14) (2015).

In their brief on appeal Wunderlich and Alexander argue, in part, that the "any and all" language contained in Section 11.05(e) of the Trust Agreement shows that the clause does not refer only to existing claims and demands, but also can include disputes that have not yet arisen.  Black's Law Dictionary, however, defines the term "claim" as:

**1.** The aggregate of operative facts giving rise to a right enforceable by a court <the plane crash led to dozens of wrongful death claims>.  **2.** The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional <the spouse's claim to half of the lottery winnings>.  **3.** A demand for money or property to which one asserts a right <an insurance claim>.

BLACK'S LAW DICTIONARY 240 (7th ed. 1999).  The word "claim" simply does not include disputes that have not yet arisen.  As such, the "any and all" language contained in Section 11.05(e) of the Trust Agreement, which modifies the words "claims and demands," cannot refer to disputes not yet in existence.

The Trust Agreement does not provide that the trustee has the right to agree to arbitration prior to a claim or demand arising.  To hold that it does would result in re-writing the agreement, which clearly and unambiguously provides the trustee the right to agree to arbitration only after claims or demands arise.  Furthermore, it is difficult to comprehend how a trustee could foresee that agreeing to arbitrate a claim or dispute would be in the best interest of a minor when the trustee lacks knowledge of what that future claim or dispute might encompass.  Given the nature of the claim or dispute arbitration may very well not be in the best interest of a minor beneficiary and agreeing to arbitration could potentially violate the duties that a trustee owes to a minor beneficiary

8

of a trust. *See* Tenn. Code Ann. § 35-15-801 *et seq.* (discussing duties and powers of trustee).

As the plain and unambiguous language of the Trust Agreement did not give the trustee the power to agree to arbitration of unknown future claims or disputes, we find and hold that the signature of the trustee on the investment/brokerage account agreement agreeing to arbitration does not bind the Minor beneficiary of the Trust to conduct arbitration of unknown future disputes or claims.

## Conclusion

The judgment of the Trial Court granting the motion to compel arbitration is reversed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the appellees, Wunderlich Securities, Inc. and Albert M. Alexander, Jr.


_____
D. MICHAEL SWINEY, CHIEF JUDGE

9